JARDINE, MATHESON & COMPANY, LIMITED, Respondent,
*v.* HUGUET SILK COMPANY, Appellant.

Sale — construction of contract for purchase and sale of foreign goods — when buyer may not repudiate contract and refuse to accept goods, because invoices were mutilated and because goods were not imported expressly for buyer — rejection of evidence.

1. Defendant contracted to purchase from plaintiff certain bales of silk as specified. The defendant refused to receive the silk when tendered upon the ground that the documents attached to the invoice had been mutilated and that the silk was not imported by plaintiff but bought by it on the market expressly for the defendant. *Held*, that as the alleged mutilation consisted only of cutting out the name of the person to whom certain certificates were issued as to qualities of the silk, and as it was no part of the contract that the silk should be imported by plaintiff, defendant had no right to reject it on either ground.

2. As to some of the silk offered by plaintiff to meet the requirements of the contract, defendant offered evidence tending to show that it did not comply with its terms. Objection was taken that the silk was not rejected upon the question of quality, and upon inquiry by the court as to the object of the evidence, which was not disclosed, the objection was sustained. *Held*, that it is apparent from the record that the evidence was offered as matter of defense rather than in reduction of damages, and if the plaintiff wished to introduce the evidence in order to reduce damages it should under the circumstances have so stated so that the court could have understood its position.

*Jardine, Matheson & Co.* v. *Huguet Silk Co.*, 138 App. Div. 903, affirmed.

(Argued October 13, 1911; decided November 3, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 20, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The plaintiff is a corporation organized under the laws of the colony of Hong Kong, and the defendant is a cor-

18

poration organized under the laws of the state of New York.

The action was brought to recover damages for an alleged breach of contract for the purchase of raw silk sold by plaintiff to defendant. On the trial it appeared that on the sixth of September, 1907, the parties entered into a contract, in writing, whereby the plaintiff sold to the defendant and the defendant purchased from the plaintiff fifteen bales of silk described as " To arrive, 15 bales Italian Extra Classical 10/12 (Reeled from White Bagdad Cocoons) $6.05 per pound. Silk to be delivered here 1 B during the first week of January, 1908, and 1 B weekly thereafter. Weights, Conditioned weight. Terms, 90 days from delivery." The silk thus contracted for was a specialty used in this country chiefly by the defendant.

On the 30th of December, 1907, the defendant wrote the plaintiff as follows: " Please take note to ship on Friday next, January 3rd, one bale silk 10/12 out of our last contract No. 10,575 we have with you. As we are badly in need of this silk, we request you to see that this bale is shipped exactly as directed." Beneath the signature of the defendant there was written a request to ship to " Canisteo Silk Co., Canisteo, N. Y.," which company at the time " carried on manufacturing for the defendant." This letter was received by the plaintiff on Thursday, January 2d, 1908, and the next day it wrote to the defendant stating that " Your silk under contract No. 10,575 has not yet arrived; but we shall be able to make delivery the first of next week. Our reason for delaying response has been that we wished to ascertain just what is our position regarding deliveries, and we now take pleasure in advising that the first bale can be delivered early next week." On Saturday, January 4th, the defendant wrote to the plaintiff, and after acknowledging receipt of its letter of the third instant, said: " Your not being ready to deliver this week one bale of silk 10/12 is

not in accordance with our contract No. 10,575 of Sept. 6th past, which calls that one bale out of this contract is to be delivered here during the first week of Jan. 1908 and in reference to this fact you have not yet executed above contract and we consider same as canceled." The plaintiff answered this letter on the 6th of January, 1908, and stated: "You are quite correct that under this contract we are obligated to ship you one bale Italian Extra Classical 10/12 White Bagdad Cocoons during the first week of January. You are, however, under a misapprehension as to when the 'first week of January' ends. The first week of January ends with the first seven days, that is, a shipment made on or before the afternoon of Jan. 7th would be a proper delivery."

The plaintiff alleged in its complaint that on the 6th of January it shipped to the Canisteo Silk Company one bale of silk of the description and at the price mentioned in the contract and sent to the defendant sizing and conditioning certificates and a bill amounting to $1,153.19. The defendant in its answer denied the shipment but admitted the sending of the bill.

On the seventh of January the defendant wrote the plaintiff acknowledging receipt of its letter of the sixth, and after expressing surprise at its contents, said: "Instructions have been given to our mills to refuse any bale from the railroad company and we return to you enclosed your invoice dated Jan. 6th, which we cannot accept. The documents attached to your invoice are not correct, having part of them cut out and show that for some particular reason something is wrong. It is the unquestionable proof that this bale was not imported by yourselves, but bought on the market expressly for us."

The plaintiff replying on the same date, after reciting its obligation under the contract, said: "We shipped you a bale of this quality and size yesterday, thus complying with the first delivery of our contract. The succeeding deliveries will be made literally on time and you must

accept your obligations under this contract. The documents attached to our invoice for bale 9,150 are correct. We cut out the name of the firm for whom the silks had been conditioned in Europe and their mark. This is quite customary and permissible in silk transactions. Our contract does not obligate us to state to our buyer from whom the silk has been purchased. We simply must deliver a certain article at a specified time and this we are doing. It is not within your province to question whether we bought the silk expressly for you or not; in other words, where or how we secured the silk, is irrelevant and immaterial under the terms of our contract. * * * Regarding bale 9,150, we beg to suggest that you instruct your mill to accept this bale without prejudice to the rights of either party in the premises. We on our part are quite willing to agree that this should not be used against you in any arbitration or legal action. It will avoid the risk and inconvenience of returning it to our warehouse. Your prompt decision as to which course you wish to pursue in settling this question would be much appreciated as we must, under our contract, bill and ship you the second bale not later than Monday the 13th, inst., which bale is now awaiting your shipping instructions."

To this letter the defendant replied on the next day as follows: "All our contracts with you, were made to have the silks bought and delivered through Messrs. Chabrieres, Morel & Co., Lyons, France, for whom you are agents. The documents attached to every invoice must not bear any cut out, as official paper should be. They show, as we wrote you, that this silk was not imported as above mentioned — but simply bought here, on the market, the latter part of the past week. We confirm you again that we will refuse any bale from the Railroad Company and we return to you enclosed, your invoice dated Jan. 6th, which we do not accept."

Between the date of the contract in September and the commencement of this correspondence there had been a

decided fall in the price of raw silk and the decline continued for some time after the correspondence ceased. In due time and upon due notice the plaintiff sold the silk in question on the defendant's account for the net price of $12,883.06 and brought this action to recover the sum of $7,313.76, the difference between the contract price and the price for which the silk was sold.

The plaintiff alleged in its complaint the foregoing facts in substance, among others, and the defendant by its answer, after admitting some of the allegations and denying others, alleged as a separate and distinct defense "that the plaintiff herein failed to deliver to the defendant one bale silk 10/12 of the description and at the price referred to in the contract set forth in the complaint during the first week of January, 1908, as therein provided and that thereupon and because of such failure so to deliver the said defendant canceled said contract and notified the plaintiff of such cancellation."

The jury found a verdict in favor of the plaintiff for the amount claimed and interest, and the judgment entered accordingly was affirmed by the Appellate Division, one of the justices dissenting.

*James F. Lynch* and *D. E. Lynch* for appellant. The appellant is not restricted by any causes for rejection stated in the cancellation notice of January 4, 1908, because of respondent's failure to treat such notice as a rescission, and its subsequent tender of performance. (*Richard* v. *Haebler,* 36 App. Div. 94.) The appellant in proving its right to reject was restricted only by the causes for rejection set forth in letter of January 7, 1908, returning invoice and conditioning and sizing certificates. (*Browne* v. *Patterson,* 165 N. Y. 460; *Cunningham* v. *Judson,* 100 N. Y. 179; *Wallace, Muller & Co.* v. *Valentine,* 10 Misc. Rep. 645; *Lake* v. *McElfatrick,* 139 N. Y. 349; *Dauchey* v. *Drake,* 85 N. Y. 407; *Hill* v. *Blake,* 97 N. Y. 216; *Tobias* v. *Lissberger,* 105 N. Y. 404; *Bank*

*of Montreal* v. *Recknagel,* 109 N. Y. 482; *Clark* v. *Fey,* 121 N. Y. 470; *Norrington* v. *Wright,* 115 U. S. 188; *Glaholm* v. *Hays,* 2 M. & G. 265.)

*Carlisle Norwood* for respondent.   When the refusal to accept purchased goods is based upon particular objections, formulated and deliberately stated, all other objections are deemed waived and the vendor to recover the price need only prove compliance with the contract of sale in the particulars covered by the stated objections.   (*Browne* v. *Patterson,* 165 N. Y. 460; *Hess* v. *Kaufherr,* 128 App. Div. 526; *Littlejohn* v. *Shaw,* 159 N. Y. 188; *Rochevot* v. *Wolf,* 96 App. Div. 506.)

VANN, J.   Both parties agree that the defendant is not restricted by the grounds for rejecting the silk as stated in the cancellation notice of January 4th, 1908, because the plaintiff failed to treat such notice as a rescission and tendered performance after that date.   They further agree that the defendant, in proving its right to reject, was restricted only by the grounds for rejection set forth in its letter of January 7th, 1908, returning the invoice and certificates.   Those grounds were that the documents attached to the invoice had been mutilated and that the silk was not imported by plaintiff but bought by it on the market expressly for the defendant.

The documents in question are known as "conditioning and sizing certificates," which are issued by licensed persons in Milan and Florence, the one to establish the weight of the silk and the other the thickness of the thread.   They are accepted in the silk trade for these purposes.   The certificates furnished showed both weight and thickness and in great detail the special process, through drying and other preliminary preparation, by which each was arrived at.   This is the sole object of such certificates and the name of the person to whom they are issued is incidental merely and immaterial.   The contract between the parties required the silk to be conditioned as to weight,

but not as to size, and the certificates rejected by the defendant were conditioned as to both.   The name of the person to whom the certificates were issued did not concern the defendant and the plaintiff had the right to cut out the name in order to keep it secret if it so desired. The certificates showed on their face that the part removed was simply the name of the one for whom the work of conditioning was done, leaving the remainder untouched and complete in every respect.   We think that the first ground upon which the defendant planted itself did not warrant its action in attempting to cancel the contract.

The silk was sold "to arrive," which means that it was to be imported and the words "Italian" and "White Bagdad" carry the same implication.   Such silk is not produced in this country and if used here must be imported. There is nothing in the contract, however, to indicate by whom the importation was to be made and any imported silk which met the terms of the contract in other respects was a sufficient compliance therewith.   It matters not that the plaintiff at first intended to deliver silk imported by itself and that the defendant expected it would, for when its own silk failed to arrive in time it had the right to purchase and deliver other imported silk of the kind called for by the contract.   It was no part of the contract or of the description of the silk that it should or should not be imported by the plaintiff or by any particular person.   The substance of the agreement on the part of the plaintiff was that imported silk of a certain quality should be delivered at a certain time· and the defendant had no right to reject silk which satisfied these requirements.

The defendant claims the silk was not only to be imported but that it was to be imported between the date of the contract and the date of ·delivery.   Assuming this to be so, the date of the conditioned certificates, "Milano, 23 Novembre, 1907," indicates that the silk arrived after the date of the contract and before the attempt to deliver.

This was presumptive evidence of the date of importation, which was within the limitations of the contract even when construed according to the defendant's theory.

The defendant further claims, although it did not take this position until the eighth of January, 1908, when the rights of the parties had become fixed, that under its previous contracts with the plaintiff the latter had delivered only silk purchased by it from a particular firm in France and it attempted to show this fact by offering certain letters which were excluded by the court as immaterial. As the letters are not referred to in the contract, they form no part of it and hence the previous dealings between the parties were of no importance. If the plaintiff did what it agreed to do the defendant cannot lawfully complain if there was a departure from its custom in procuring part of the silk required from a new source. It had the right to get the silk wherever it could and was under no obligation to buy it of any particular concern, even if in past transactions with the defendant this had been its custom. The contract as written measures the rights and obligations of both parties and as the silk offered was the silk sold, the defendant had no right to rescind upon any grounds which it relied on in its letter of January 7th, 1908, refusing to accept any silk for the reasons therein stated. When that letter was written and received there was still time for the plaintiff to ship the first bale. While there is some evidence that the shipment had already been made, even if there were none the plaintiff was not obliged to attempt any delivery after receipt of that letter from the defendant stating that it had instructed its mills "to refuse any bale from the railroad company." A refusal to accept made when there was still time to deliver, relieved the plaintiff from making any further effort to deliver. We hold that the reasons relied upon and stated by the defendant did not warrant rescission and as by its own action it is limited to those reasons it follows that, according to the record now before us, the contract was in force when this suit was commenced.

Shortly after the contract between the parties was made the plaintiff ordered fifteen bales of silk from a firm in Lyons, France, but as they failed to arrive in time for the first delivery it bought two bales of an importing firm in New York in order to meet the requirement to deliver "one bale during the first week of January, 1908, and one bale weekly thereafter." These two bales were all that the plaintiff had in readiness to deliver during that week. By a witness who qualified as an expert, the defendant attempted to show that these bales did not contain silk "Italian Extra Classical 10/12 Reeled from White Bagdad cocoons" but that they contained silk "Italian Extra Classical 10/12 Bagdad." This was objected to as immaterial and the objection was sustained. Many questions upon the subject were asked commencing with this: "From what cocoons is 'silk Bagdad' produced?" This was objected to by the counsel for the plaintiff as immaterial and he added: "These were not rejected for quality. They are trying to introduce quality. There is no question of quality. They were not rejected on the question of quality." The objection was sustained and an exception was taken. To all the questions immediately following relating to quality the objection interposed was simply "immaterial," as before, and no suggestion was made by the defendant's counsel that he had any purpose in offering the evidence except to show that as the quality was inferior there was the right to reject on that ground. Among other questions asked was the following: "Is there any distinction in the silk trade between 'silk Bagdad' and 'silk reeled from white Bagdad cocoons?'" This also was objected to as immaterial and the objection was sustained. The defendant's counsel thereupon remarked: "I think we ought to have (the evidence) that there is a distinction between them. He can testify that there is a difference in the trade in the classification as 'silk Bagdad' and 'silk reeled from white Bagdad cocoons.' I think the witness should be

allowed to say that there is a difference." The court: "How does it apply to this case?" Defendant's counsel: "It applies in my conception of the case and in my presentation of the case." The court: "You can take the benefit of an exception to my ruling." Defendant's counsel: "There is nothing to show that those terms have any import unless this witness testifies that there is a difference between the two. I take an exception."

The defendant now claims that as the two bales were sold with the others on account of the defendant for $4.20 per pound, or $1.85 less than the contract price, the difference formed part of the damages assessed by the jury. It further claims that the damages are an independent factor in the cause of action and, hence, even if it had no right to refuse delivery on the ground of quality because it did not take that position in the first place, still it had the right to the evidence offered in order to show that the two bales were worth less than the others, so that it might reduce the damages accordingly.

There would be force in this position if the evidence had been offered for that purpose, but it is apparent from the record that it was offered as matter of defense rather than in reduction of damages. If the plaintiff wished to introduce the evidence in order to reduce damages it should have said so under the circumstances, so that the court could have understood its position. No suggestion of that kind was made even when the court asked how such evidence applied to this case, and it is now too late for the defendant to take a position which it did not take and apparently did not think of on the trial. Its effort was to defeat the contract and justify its attempt to rescind it. The main struggle was not over the amount of damages flowing from the inclusion of the two bales, but over the right to recover at all. The defendant tried to get rid of a bargain which turned out to be a losing one and fought hard to defend its right to reject the goods altogether. The minds of the court and the counsel for

the plaintiff were obviously on that subject and not on the subject of damages when the evidence in question was offered, and it was incumbent upon the defendant to state the object of the evidence, when expressly asked, if it was other than to defeat the contract. While the evidence may have been competent for one purpose, it was evidently offered for another and the ruling made on that theory does not involve reversible error.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment affirmed.