### BRADLEE & McINTOSH CO. v. FREY & SON, Inc.

(Circuit Court of Appeals, Fourth Circuit.    March 21, 1922.)

No. 1932.

**Sales ⟨⟩81(1)—Delivery held not in compliance with contract.**

A contract by plaintiff for sale to defendant of sugar to be imported, which stated that the sugar was "expected to arrive in New York June and July," *held* not to bind defendant to accept sugar tendered in September, where it was not shipped in such vessel and by such route as warranted a reasonable expectation of its arrival in New York in July.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by the Bradlee & McIntosh Company against Frey & Son, Incorporated. Judgment for defendant, and plaintiff brings error. Affirmed.

W. Irvine Cross, of Baltimore, Md., for plaintiff in error.

Horace T. Smith and Charles McHenry Howard, both of Baltimore, Md., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

WOODS, Circuit Judge.    Plaintiff, Bradlee & McIntosh Company, of Boston, made this contract for the sale of Sugar with defendant, Frey & Son, Incorporated, of Baltimore:

"April 26, 1920.

"Sold to Frey & Son, Baltimore, Maryland, 1,000 (one thousand) bags (approximate weight 224 pounds net each) foreign refined granulated sugar, packed in double bags, @ 24c. (twenty-four cents) per pound, duty paid, ex ship New York. Landed weights.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Shipment: From source during April and May, expected to arrive in New York June and July.

"Payment: Buyer to open immediately irrevocable bank credit for approximate value in favor of Bradlee & McIntosh Company, payable against shipping documents.

"Force majeure conditions to apply to this contract. No arrival, no sale."

A number of like contracts were made with other dealers at the same time. These contracts of sale were made by Bradlee & McIntosh Company on the faith of its own contract for 1,150 tons of sugar with Czarinkow-Rionda Company, of Hong Kong, dated April 22, 1920, containing these provisions:

"Shipment to be made during April, May, 1920, as follows from Hong Kong, with transshipment at Port Said, Gibraltar, or London, at sellers' option for New York.

"450 tons per S. S. Gleniffer, scheduled to load abt. mid April.

"200 tons per S. S. Professor, scheduled to load May.

"500 tons per S. S. Glenade, scheduled to load abt. end May."

The Gleniffer sailed from Hong Kong the latter part of April. At Gibraltar the sugar was transshipped by another vessel, and reached New York in July. All of this consignment was delivered to purchasers other than Frey & Son, for the reason that their letters of credit would expire earlier than that of Frey & Son. The Glenade sailed from Hong Kong for London, May 27, 1920. The sugar was transshipped in London, and reached New York September 2, 1920. The quantity of sugar contracted to Frey & Son was shipped to it from that vessel. Defendant refused to receive it, on the claim that the delivery was not in compliance with the contract. It was then sold by plaintiff. This action is for the difference between the price realized and the contract price.

The obligation of the parties was fixed by the contract at its date. The plaintiff did not guarantee delivery at any specific time, but it did give defendant these assurances against indefinite delay, namely: That the sugar should be shipped from the source between the 1st of April and the last of May, and by such vessels and route as would produce in the minds of the plaintiffs a reasonable expectation that it would reach New York in July. The shipment in the Glenade from Hong Kong was actually made within the time required by the contract. The only question is whether it was made in such vessel and by such route as warranted the reasonable expectation that it would reach New York in July. If it was, then the plaintiff complied with its contract, and the defendant was bound to take the sugar at the price specified, although the sugar did not arrive until September; if it was not, then the plaintiff breached one of the vital conditions and the defendant was relieved. On this issue the burden was on the plaintiff to prove compliance with its contract.

The sole reliance of the plaintiff for the alleged expectation that the sugar would reach New York in July was its own contract with Czarinkow-Rionda Company, of Hong Kong. Plaintiff's treasurer, Bradlee, testified that his corporation was new in the business, had never imported from China before, and knew little about trade conditions; that, according to the information he had, a cargo starting from Hong

Kong the end of May might have reached New York by July 31st, "if it came on fast boats, and the boat had come right along, and it did not make a lot of stops." This seems to be an admission that his corporation was not warranted in having a reasonable expectation at the date of the contract that sugar shipped "about end of May" in the Glenade, and transshipped at Port Said, Gibraltar, or London, would reach New York in July.

The testimony of witnesses engaged in the Far East trade was to the effect that all informed persons knew that delivery could have been made in New York within the time of expectation only by a vessel taking a direct route and without the delay of transshipment. There was also uncontradicted testimony to the effect that according to the custom and understanding of the trade the contract between plaintiff and defendant meant a direct voyage without transshipment.

We are unable to perceive how the plaintiff can claim that actual arrival in New York in July by another vessel of enough sugar to fill its sale to defendants was a fulfilment of its contract. Surely it would have been had this sugar been tendered defendant. But plaintiff's allocation of that sugar to other buyers, and of the sugar on the Glenade to the defendant, was an irrevocable binding declaration that the defendant's sugar was shipped on the Glenade on May 28th.

The District Judge submitted to the jury as the vital issues: (1) Did the plaintiff ship the sugar for the defendant in such a vessel and by such route that it had a reasonable expectation of arrival in New York in July? and (2) did the contract, according to the common understanding of the trade, mean that the shipment should be made by direct route without transshipment? These were the vital issues, upon which the testimony left little room for doubt. These issues were conclusively decided by the jury against the plaintiff.

Affirmed.