## LAMBORN & CO. et al. v. LOG CABIN PRODUCTS CO.

(District Court, D. Minnesota, Third Division. June Term, 1923.)

1. **Pleading ☜36(3)—Defendant estopped by admission and allegation in answer.**

In action for breach of contract for sale of sugar to be shipped by steamer to be declared later, where answer admitted and alleged that certain steamer was declared, defendant was estopped to deny that declaration was made in proper form and at time alleged.

2. **Contracts ☜279(1)—Tender need not be averred or proved when contract repudiated.**

Where either party to contract gives notice to the other that he will not comply with its terms, the other need not, in action for breach, aver or prove tender of performance on his part.

3. **Sales ☜153—Buyer held to have repudiated contract and thereby waived right to tender.**

Where buyer of sugar wrote seller that because of delay in delivery it was not further interested, and had its attorneys notify seller that contract was terminated and that it would not accept the sugar, there was a repudiation of the contract, and waiver of right to insist on tender.

4. **Sales ☜79—Contract for "shipment" within certain months held to refer to loading.**

Contract for sale of sugar, providing for "shipment" from India, during April or May, at seller's option, meant that the sugar should be loaded on board the ship during such months, especially where correspondence indicated that the parties so understood.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Shipment.]

5. **Contracts ☜212(2)—Reasonable time for performance implied.**

If no time for performance is fixed by contract, the law implies a reasonable time.

6. **Sales ☜81(4)—Time needed to complete loading of vessel, or to make minor repairs, or transship cargo held an incident of the voyage.**

Under contract for sale of sugar, providing for shipment within certain months, but not specifying time of delivery, reasonable time needed to complete loading of other goods at the same or another port on journey to destination, or to make needed minor repairs, or to transship the cargo, if vessel becomes unseaworthy, or if time to make her seaworthy is of considerable length, is a mere incident of the voyage to which the contract is made subject.

7. **Sales ☜81(1)—Parties may limit time for delivery.**

Parties may by contract of sale expressly limit the time for delivery, and reasonable time is then no longer controlling.

8. **Sales ☜81(2)—Time of delivery held not limited by time limit in letter of credit.**

Under contract for sale of sugar, specifying time for shipment from India, but not time for delivery, and requiring buyer to open irrevocable letter of credit for the invoice value, time limit specified in letter of credit *held* not to limit time for delivery and time for delivery was governed by rule of reasonable time.

9. **Sales ☜89—Evidence of modification of contract by letter of credit must be clear and convincing.**

Where contract for sale of sugar, requiring buyer to furnish letter of credit, specified no time limit for delivery, if time limit contained in letter of credit furnished was intended to limit time of delivery it was a modification of the contract, and evidence of such modification must be clear and convincing.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. Sales ⚖️150(3)—Sugar held delivered within reasonable time.

Under contract for sale of sugar for shipment from India in April or May, but not specifying time of delivery, and under which seller impliedly gave assurance that it would be so shipped as to create reasonable expectation of arrival in New York and delivery on cars by September 30, offer of delivery in October *held*, under the circumstances disclosed by the evidence, within reasonable time.

At Law. Action by Lamborn & Co. and others against the Log Cabin Products Company. On motions for directed verdicts. Defendant's motion denied, and plaintiffs' motion granted.

Morphy, Bradford & Cummins, of St. Paul, Minn., and Louis O. Van Doren and Alfred C. B. McNevin, both of New York City, for plaintiffs.

Moore, Oppenheimer, Peterson & Dickson, of St. Paul, Minn., Mr. Munn, of Chicago, Ill., and Herbert Barry, of New York City, for defendant.

BOOTH, District Judge. This is a suit for damages for breach of contract. The evidence has been taken, and each party has moved for a directed verdict in its own favor. The broad ground, in each motion, is that the evidence conclusively shows that the moving party has performed the contract on its part, and that the opposite party has failed in performance. It becomes necessary, therefore, to examine the contract and the evidence as to the performance by the respective parties.

The contract is one for the sale of 5,000 bags of Java white sugar, to be delivered f. o. b. cars New York, shipment to be made during April or May, at the option of the sellers, from India, by steamer or steamers to New York, names of such steamer or steamers to be declared later. Payment to be made by net cash, on presentation of sight draft with invoice and bill of lading attached. Buyers to open within five days confirmed irrevocable letter of credit in favor of Lamborn & Co. for the full invoice value with National City Bank or the Bank of Manhattan Company, New York City, and bankers to confirm same to Lamborn & Co., New York City. Those are the principal clauses in the contract having a bearing in this case, and the letter of credit referred to is in the usual form, limiting the time within which drafts will be paid against the letter of credit to the 30th of September, 1920.

Most of the facts in relation to the alleged performance and alleged breach appear without serious contradiction in this case—that this contract was entered into by the parties about April 22, 1920, covering sale of the sugar by the plaintiffs to defendant; that this letter of credit was posted by the defendant for the benefit of the plaintiffs, as called for by the contract; that certain sugar was shipped by the plaintiffs from India, and reached New York some time in October, 1920. The movements of the ship Morocco, and of the transshipment on the ship Manica and the dates of such movements, are practically undisputed, and that the defendant refused to accept the sugar, and that the sugar was sold on the market by the plaintiffs, for an amount less than the price named in the contract. Those facts, I say, appear without contradiction.

Several disputed questions arise, however, on the pleadings and the evidence, largely relating to the legal effect of these established facts: First: Was shipment made of the sugar by plaintiffs from India by steamer to New York during April or May, 1920, as provided by the contract? And did it reach New York ready for delivery within the time limited for performance? Second: Was a tender made of the sugar by the plaintiffs to defendant at New York within the time allowed for performance? Third: Was a declaration made by plaintiffs to the defendant of the ship on which the sugar for the defendant was being transported? These questions will be taken up in reverse order.

[1] As to the question of declaration of steamer: The question has been raised upon the trial whether the plaintiff declared steamer to the defendant upon which defendant's sugar was in transit. The subordinate question, whether the provision for a declaration of a steamer is solely for the benefit of the seller, or for the benefit of both parties, breach of which provision can be taken advantage of by the buyer, need not be decided in this case. Nor need the evidence be considered to determine whether a declaration was made in proper technical form by the seller. This whole matter of declaration is settled, in my judgment, by the answer of the defendant in the case. In that answer it is specifically admitted and alleged that the steamer Morocco was declared by the plaintiff to the defendant on June 25, 1920. By reason of these allegations in the answer, defendant is estopped to deny that a declaration of said steamer was made in proper form, and at the time stated in the answer.

[2] As to the question of tender of the sugar: There is no dispute that the sugar reached New York in October, 1920, and that plaintiffs notified defendant of its arrival. There is no dispute that there was no actual physical tender of the sugar made, nor tender of any papers delivery of which would symbolize delivery of the sugar. But it is claimed by the plaintiffs that, under the circumstances of the case as disclosed by the evidence, such a tender was not necessary.

It appears to be well settled that, where either party to a contract gives notice to the other that he will not comply with its terms, the other need not, in action for damages for the breach, either aver or prove a tender of performance on his part. That rule is laid down in 13 Corpus Juris, p. 728. It is also laid down in Gray v. Smith, 83 Fed. 824, 28 C. C. A. 168, in Jardine, Matheson Co. v. Huguet Silk Co., 203 N. Y. 273, 96 N. E. 449, and in Gordon Co. v. Bartels Co., 206 N. Y. 528, 100 N. E. 457, 461.

[3] As to the repudiation of the contract by the defendant: Exhibit 92 is a letter from the defendant company to plaintiffs, dated October 2, 1920, in which they say, in answer to a communication from the plaintiffs:

"Very probably, in writing us, you had in mind our agreement with you of April 22, 1920, for the purchase of sugar to be shipped from India. No sugar has been delivered, however, in accordance with the agreement, and our letter of credit expired on September 30, 1920. In view of all the facts, we do not feel that we are further interested under the contract."

And in Exhibit 97, written by the attorneys for the defendant to the plaintiffs, we find this language:

"We are acting as counsel for the Log Cabin Products Company, of St. Paul, Minnesota, and have been requested by that company to notify you as follows: 'Owing to fact that contract covering purchase of sugar has not been complied with on your part, it is terminated and we are under no further obligations. We will not accept or pay for this sugar.'"

Other exhibits in the case, including Exhibits 93, 98, 104, 104a, 105, 100a, and 102, from the plaintiffs, show that the plaintiffs were ready, able, and willing to deliver the sugar after its arrival, in October, 1920, and that they so notified the defendant. My conclusion is, from these exhibits and from the other evidence, that there was a repudiation of the contract by the defendant, and that physical tender was therefore unnecessary. By its repudiation of the contract the defendant had waived its right to insist upon a tender.

[4] We come next to the question of shipment from India during April or May, 1920, and of the arrival at New York within the time limited for performance. The contract reads:

"Shipment to be made during April-May, 1920, at option of sellers, from India, by steamer or steamers to New York."

And the question is: What is the meaning of the term "shipment"? In the case of Bowes v. Shand, L. R. 2 Appeal Cases, 455, the contract read:

"Rice to be shipped at Madras or coast for the port of London, during the months of March and April, about 300 tons per Rajah."

Most of this rice was put on board in February, but the last of it in March, and the vessel sailed on March 10th. Vendee refused to take the rice, on the ground that it was not shipped during the months of March or April, but during the month of February. It was held by the court, inasmuch as by far the greater portion of the rice was placed on board in the month of February, and that only a very small portion of the rice was put on board during the month of March, that the rice in fact was shipped in February, and before the month of March. It was further held that the term "shipped" meant "put on board," and it was further held that any evidence to vary the meaning of a well-established term, such as "shipped" or "shipment," must be very clear and consistent.

In the case of Harrison v. Fortlage, 161 U. S. 57, 16 Sup. Ct. 488, 40 L. Ed. 616, the contract read:

"Shipping or to be shipped during this month from the Philippines to Philadelphia, per steamer Empress of India."

The steamer met with an accident, and part of the cargo was transported by another ship. All of the cargo on these two ships reached Philadelphia six or seven months later than usual. It was all refused. On the trial a verdict was directed for the plaintiff, plaintiff being the seller. It was held that the term "to ship by" means to "put on board," and does not include the subsequent carriage, and that the plaintiff had performed that condition of the contract by putting the sugar on board the steamer Empress of India, and that it became the duty of the

master of the ship, when the Empress of India was disabled, to transfer the cargo, or such portion of it as might be necessary, into another ship, and forward it in that way. The same meaning is given to the word "shipment" in case of Ledon v. Havemeyer, 121 N. Y. 179, 24 N. E. 297, 8 L. R. A. 245.

These cases, in my judgment, show that the term "shipment" has a well-established meaning in the law relating to shipping. I am also of the opinion that this meaning was known to the parties to this contract; that the defendant knew it. In Exhibit 63a, which is a telegram sent from the defendant to the plaintiffs, we find this:

"Your night letter dated August seventeenth caused us to make new inquiry as to the movements of the Str. Morocco, and we are just advised that she did not *take on* our sugar until after May 31st, last permissible date of shipment. Are these advices correct? If so, the shipment was not made in accordance with our contract with you dated April 22d. We therefor hereby elect to cancel the same."

This in my mind shows that the defendant knew that the meaning of the word "shipment" was to "take on"; that this was the ordinary meaning when used in connection with transportation by vessel. I am led to the same conclusions by Exhibits 81 and 87, which were also communications by the defendant. My conclusion is that the word "shipment," used in the contract, meant loaded on board ship, and that the parties to this contract understood it in that sense. In addition to the cases already cited may be given the case of Second National Bank v. Columbia Trust Co. (C. C. A.) 288 Fed. 17.

[5] The next question is Whether the sugar reached New York within the time limited for performance? If no time is fixed by the contract, the law implies reasonable time. After considering this matter of reasonable time as carefully as I have been able during the period of adjournment, I have reached the following conclusions:

[6] If, after the goods are shipped, that is, put on board the vessel, a further reasonable time is needed to complete the loading of other goods, in order to make up the cargo, either at the same port or at another port on the journey to new destination, that consumption of time is but an incident of the voyage. If the vessel is found to need minor repairs, the time consumed in making them is but an incident of the voyage. If the vessel becomes unseaworthy, and unable to complete the voyage, or the time to make her seaworthy is of considerable length in comparison with the time necessary to complete the rest of the voyage, it becomes the duty of the master of the ship to transship the cargo, if this is feasible, and the time consumed by these matters is also an incident of the voyage. These conclusions I think are to be deduced from the following authorities: Harrison v. Fortlage, 161 U. S. 57, 16 Sup. Ct. 488, 40 L. Ed. 616; The Strathdon (D. C.) 89 Fed. 374; The Joseph Farwell (D. C.) 31 Fed. 844; Carver & Co. v. Sasoon & Co., 17 Com. Cases, 59. In the Strathdon Case this language was used:

"Where a ship becomes unfit for navigation from a cause which does not involve a breach of duty on the part of the carrier, and it is necessary to interrupt the voyage for the purpose of repairs, the master may detain the cargo until such repairs shall have been effected; but, if reparation be im-

possible or impracticable within a reasonable time, it may be the duty of the master to use suitable effort to find and employ facilities for transshipping and forwarding the cargo to its destination."

The same doctrine is laid down in The Niagara v. Cordes, 21 How. 7, 16 L. Ed. 41, and in the case of The Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772.

In the case at bar both parties understood that the sugar was to come by ocean voyage from India. They must, therefore, have made their contract subject to the incidents of such voyage. No time was expressly fixed for delivery in the contract of sale, unless by virtue of the letter of credit, and therefore the parties must have had in contemplation whatever time the vessel might reasonably take for the voyage, provided it was a seaworthy vessel, and provided that it pursued a customary or a not unreasonable route. These various delays above mentioned must be presumed to have been in contemplation of the parties when contracting in reference to the delivery of the goods which were to come by ocean voyage. It is true the parties could not foresee that these delays would all happen, or, indeed, any of them; but the parties must be held to have foreseen that any or all of them were liable to happen, and, if they did happen the time necessarily consumed would not be regarded as making time of voyage unreasonably long.

[7-9] But, of course, the parties may by their contract expressly limit the time for delivery, and, if they do, the question of reasonable time is no longer controlling. It is claimed by the defendant here that the time for delivery was fixed by the parties in their contract. The contention is that the letter of credit was part of the contract of sale, that the delivery of the goods and the payment were to be concurrent, that the time for payment was limited to September 30, 1920, and that therefore the time for delivery was also limited to that date. The argument has force. But I am not persuaded that it is conclusive. It is not necessary, in my judgment, to discuss the question whether the letter of credit is a separate, independent contract, or became part of the contract of sale. It may be assumed that they should be read together, yet I do not think the conclusion sought by the defendant can be fairly drawn from them, when read together, in the light of the circumstances existing at the time, and in the light of the conduct of the parties shortly thereafter.

In the first place, such a time limit in a contract of sale would in my opinion be unusual in the trade and quite improbable, in view of the fact, disclosed by the evidence, that the plaintiffs had already made a contract for the purchase of sugar to fulfill their contract with the defendant, and that their contract with the sellers was without any such provision limiting the time of arrival at New York. It was a c. i. f. contract, New York, shipment from India, April or May. In the second place, the contract in the case at bar provides a time limit of shipment from India, but provides further for relief in certain contingencies, such as embargoes, etc., and it seems to me highly improbable, in view of this, that the seller would have consented to a time limit for delivery in New York, without a corresponding provision for

relief, in case of similar circumstances, such as embargoes, storms, etc. In the third place, it seems improbable that the parties would have omitted the provisions for time limit for delivery from the sale contract itself, if they had intended that there should be one.   In the fourth place, I doubt whether the time limit in the letter of credit precluded all payment after the date fixed, or relieved from liability, except liability on that particular letter of credit.   And, finally, the sales contract as drawn provided for a letter of credit irrevocable, and without time limit.   The sales contract itself contained no time limit for delivery of the sugar at New York.   If the time limit on the letter of credit was intended to be also a time limit on the delivery of the sugar, then it was a modification of the sales contract as originally made, and, even assuming that the sales contract could be so modified under the statute of frauds, yet the evidence of such modification must be clear and convincing.   Such is not the case here, in my judgment.

I conclude, therefore, that the time limit in the letter of credit did not have the effect of limiting the time for delivery under the sales contract, but that the time for delivery was governed by the rule heretofore stated, namely, reasonable time.   In this connection the case of Second National Bank v. Columbia Trust Co. (C. C. A.) 288 Fed. 17, may be cited.

[10] Let us apply this rule to the facts in the case:   The sugar was shipped on the Morocco at Karachi, May 29, 1920.   The Morocco reached Bombay June 2d or 3d.   From that time until July 3d it remained in Bombay, the balance of the time in unloading and loading the new cargo.   The evidence discloses nothing unusual or unreasonable in this consumption of time, nor was there anything unusual or unreasonable, so far as the evidence discloses, in the steamer going from Karachi to Bombay, and thence to Aiden, instead of direct from Karachi to Aiden.   There was nothing in the contract which required the steamer to go direct from Karachi to Aiden.   The evidence discloses the necessity of lying up at Alexandria by the Morocco, due to damage occasioned by storm, and it then became the duty of the master, under the circumstances, to transship the sugar, if feasible.   This he did, without unreasonable delay, so far as the evidence discloses.   The rest of the voyage by the ship Manica was without unusual incident.

Upon a consideration of the whole evidence, I am unable to see how a finding would be warranted that more than a reasonable time was consumed on the voyage from Karachi to New York, in view of all the circumstances of the case.   The contract did not guarantee delivery at any specified date.   The most that can be claimed is that plaintiffs by taking the letter of credit within the time limit September 30th, and by expressions contained in their letter of May 5th, with the document known as the letter of credit requirements, gave assurance to the defendant that the sugar would be shipped in such a vessel, and by such a route as would produce in the minds of the plaintiffs a reasonable expectation that the sugar would arrive in time to be placed on board cars at New York by September 30th.   On this theory of assurance given, the test would be:   Did the plaintiffs ship the sugar in such a vessel and by such a route that they had reasonable expectation

that the sugar would be placed f. o. b. cars New York by September 30th? This is the test laid down·in the case of Bradlee & Company v. Frey & Son (C. C. A.) 280 Fed. 375. If they did, then defendant was bound to take the sugar, though it did not arrive until after September 30th.

Under the evidence in the case, my judgment is that the question must be answered in the affirmative. The evidence shows that 45 to 55 days was the usual sailing time from India to New York. Even assuming that the plaintiffs knew that the steamer would be detained in Bombay until July 3d, as in fact it was, still 45 days would bring it to New York on August 17th; 55 days would bring it there on August 27th, leaving more than a month before the time limit in the letter of credit would expire. I think the evidence fairly and conclusively shows that the plaintiff shipped from India, within the time limited by the contract, the sugar, of the kind and quality and amount called for by the contract; that the sugar was carried to New York within a reasonable time, as called for by the contract; that plaintiffs notified defendant that they were ready, able, and willing to deliver to it the sugar; that the defendant upon such notification and prior thereto, repudiated the contract; that by reason of this repudiation plaintiffs were excused from making a physical tender of the sugar. Plaintiffs sold the sugar, for account of defendant, at the best obtainable market price, and that plaintiffs have suffered damages by reason of the breach of contract by defendant, in the sum represented by the difference between the amount received on the sale and the agreed contract price.

Under these circumstances it becomes my duty to instruct the jury to bring in a verdict for the plaintiffs. The amount of the verdict, if the plaintiffs are entitled to a verdict at all, is not, I understand, in dispute. I have not the exact figures before me, but·I understand the parties have practically agreed upon the figures. It should be the difference between the contract price and the actual market price of the sugar at the date when it was sold, with interest from that date to the present time.

Motion for directed verdict on behalf of the defendant is denied; the motion for a directed verdict on behalf of the plaintiffs is granted; and the clerk will prepare a verdict, under the instruction of the court, the figures to be furnished by counsel, so that they may be inserted in the verdict.