MISSOURI FURNACE Co. *v.* COCHRAN, Adm'x, etc.

*(Circuit Court, W. D. Pennsylvania.* August 26, 1881.)

1. FORWARD CONTRACT TO FURNISH COKE TO PROPRIETOR OF BLAST FURNACES — BREACH BY VENDOR, AND NOTICE THAT HE WILL NOT DELIVER — NEW FORWARD CONTRACT BY VENDEE — MEASURE OF DAMAGES.

Defendant's intestate sold and agreed to deliver to plaintiff, the proprietor of blast furnaces for smelting iron, 36,621 tons of Connellsville coke, at $1.20 per ton, deliverable, in equal daily quantities, on each working day during the year 1880. After delivering 3,765 tons, the vendor, without valid excuse, notified plaintiff, on February 13, 1880, that he rescinded the contract, and thereafter delivered no coke. The vendor persisting in his refusal to deliver, the plaintiff, on February 27, 1880, made a substantially similar forward contract with H. for the delivery, during the balance of the year, of 29,587 tons of such coke at four dollars per ton, which was the then market rate for such a forward contract, and rather below the market price for present deliveries. The market price of coke declined in May, 1880, to $1.30 per ton. The plaintiff brought suit on February 26, 1880. *Held*, (1) that the plaintiff was not entitled to recover the difference between the price stipulated in the contract sued on and the price which the plaintiff agreed to pay H. under the contract of February 27, 1880; (2) that the measure of damages was the sum of the differences between the price stipulated in the contract sued on and the market price of Connellsville coke, at the place of delivery, on the several days when the several deliveries should have been made under the contract.

*Sur* motion *ex parte* plaintiff for a new trial.

*Henry Hitchcock, George Shiras,* and *S. Schoyer, Jr.,* for plaintiff.

*C. E. Boyle* and *D. T. Watson,* for defendant.

ACHESON, D. J. This suit, brought February 26, 1880, was to recover damages for the breach by John M. Cochran of a contract for the sale and delivery by him to the plaintiff of 36,621 tons of standard Connellsville coke, at the price of $1.20 per ton, (subject to an

advance in case of a rise in wages,) deliverable on cars at his works, at the rate of nine cars of 13 tons each per day on each working day during the year 1880. After 3,765 tons were delivered, Cochran, on February 13, 1880, notified the plaintiff that he had rescinded the contract, and thereafter delivered no coke. After Cochran's refusal further to deliver coke, the plaintiff made a substantially similar contract with one Hutchinson for the delivery during the balance of the year of 29,587 tons of Connellsville coke at four dollars per ton, which was the market rate for such a forward contract, and rather below the market price for present deliveries on February 27, 1880, the date of the Hutchinson contract. The plaintiff claimed to recover the difference between the price stipulated in the contract sued on, and the price which the plaintiff agreed to pay Hutchinson under the contract of February 27, 1880. But the court refused to adopt this standard of damages, and instructed the jury that the plaintiff was "entitled to recover, upon the coke which John M. Cochran contracted to deliver and refused to deliver to the plaintiff, the sum of the difference between the contract price—that is, the price Cochran was to receive—and the market price of standard Connellsville coke, at the place of delivery, at the several dates when the several deliveries should have been made under the contract." Under this instruction there was a verdict for the plaintiff for $22,171.49. As the plaintiff had in its hands $1,521.10 coming to the defendant for coke delivered, the damages as found by the jury amounted to the sum of $23,692.50.

The plaintiff moved the court for a new trial; and, in support of the motion, an earnest and certainly very able argument has been made by plaintiff's counsel. But we are not convinced that the instruction complained of was erroneous.

Undoubtedly it is well settled, as a general rule, that when contracts for the sale of chattels are broken by the vendor failing to deliver, the measure of damages is the difference between the contract price and the market value of the article at the time it should be delivered. Sedgwick on the Measure of Damages, (7th Ed.) 552. In *Shepherd* v. *Hampton*, 3 Wheat. 200, this rule was distinctly sanctioned. Chief Justice Marshall there says: "The unanimous opinion of the court is that the price of the article at the time it was to be delivered is the measure of damages." Id. 204. Nor does the case of *Hopkins* v. *Lee*, 6 Wheat. 118, promulgate a different doctrine; for, clearly, "the time of the breach" there spoken of is the time when delivery should have been made under the contract.

It is said in Sedgwick on the Measure of Damages, (7th Ed.) 558, note *b:* "Where delivery is required to be made by instalments, the measure of damages will be estimated by the value at the time each delivery should have been made." In accordance with this principle the damages were assessed in *Brown* v. *Muller,* Law Rep. 7 Ex. 319, and *Roper* v. *Johnson,* Law Rep. 8 C. P. 167, which were suits by vendee against vendor for damages for failure to deliver iron, in the one case, and coal, in the other, deliverable in monthly instalments. In one of these cases suit was brought after the contract period had expired; in the other case before its expiration; but in both cases the vendor had given notice to the plaintiff that he did not intend to fulfil his contract. To the argument, there urged on behalf of the *vendor,* that upon receiving such notice it is the duty of the vendee to go into the market and provide himself with a new forward contract, *Kelly,* C. B., in *Brown* v. *Muller,* said:

"He is not bound to enter into such a contract, which might be to his advantage or detriment, according as the market might fall or rise. If it fell, the defendant might fairly say that the plaintiff had no right to enter into a speculative contract, and insist that he was not called upon to pay a greater difference than would have existed had the plaintiff held his hand."

Where the breach is on the part of the *vendee,* it seems to be settled law that he cannot have the damages assessed as of the date of his notice that he will not accept the goods. Sedgwick on Measure of Damages, 601. The date at which the contract is considered to have been broken by the buyer is that at which the goods were to have been delivered, not that at which he may give notice that he *intends* to break the contract. Benjamin on Sales, § 759. And, indeed, it is a most rational doctrine that a party, whether vendor or vendee, may stand upon his contract and disregard a notice from the other party of any intended repudiation of it. If this were not so, the party desiring to be off from a contract might choose his own time to discharge himself from further liability.

The law as to the effect of such notice is clearly and most satisfactorily stated by *Cockburn,* C. J., in *Frost* v. *Knight,* Law Rep. 7 Ex. 112.

"The promisee, if he pleases, may treat the notice of intention as inoperative, and wait the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so

advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him to decline to complete it. On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

We do not think the force of the English cases referred to has been at all weakened by that of the *Dunkirk Colliery* v. *Lever*, 41 Law Times Rep. (U. S.) 632, so much relied on by the plaintiff's counsel. Nor are the facts of that case similar to those of the case in hand. There the controlling fact was that at the time the vendee definitively refused to accept, *there was no regular market for cannel coal*, and the vendors resold as soon as they found a purchaser according to the ordinary course of their business, and without unreasonable delay. Therefore, it was held that the plaintiffs were entitled to the full amount of the difference between the contract price and that which they obtained.

Our attention has been called to *Masterton* v. *Brooklyn*, 7 Hill, 61. Undoubtedly this is a leading case in this branch of the law, and especially upon the subject of the profits allowable as damages, and the principles upon which they are to be ascertained. The suit, however, was upon a contract to procure, manufacture, and deliver marble for a building, and involved an investigation into the constituent elements of the cost to which the contractor might have been subjected had the contract been carried out, such as the price of rough material in the quarry, expenses of dressing, etc. Upon the question as to the *time* at which the cost of labor and materials was to be estimated the court was divided, and I do not find that the views of the majority upon this precise point have been followed. The case, however, lacked the element of market value, (Id. 70;) and as Judge Nelson cited with approbation *Boorman* v. *Nash*, 9 Barn. & C. 145, and *Leigh* v. *Paterson*, 8 Taunt. 540, it cannot be supposed that the court intended, in a case of a marketable article having a market value, to sanction the principle contended for here.

I see nothing in the present case to distinguish it from the ordinary case of a breach by the vendor of a forward contract to supply a manufacturer with an article necessary to his business. For such breach what is the true measure of damages? Says *Kelly*, C. B., in *Brown* v. *Muller:* "The proper measure of damages is that sum which

the purchaser requires to put himself in the same condition as if the contract had been performed." That result—which is compensation —is secured, it seems to me, by the rule given to the jury here, unless the case is exceptional. The vendee's real loss, whether delivery is to be made at one time or in instalments, ordinarily is the difference between the contract price and the market value at the times the goods should be delivered. If, however, the article is of limited production, and cannot, for that or other reason, be obtained in the market, and the vendee suffers damage beyond that difference, the measure of damages may be the actual loss he sustains. *McHose* v. *Fulmer,* 73 Pa. St. 367 ; *Richardson* v. *Chynoweth,* 26 Wis. 656; Sedgwick on Dam. 554. With this qualification to meet exceptional cases, the rule that the damages are to be assessed with reference to the times the contract should be performed, furnishes, I think, a safe and just standard from which it would be hazardous to depart.

In this case I fail to perceive anything to call for a departure from that standard. There was no evidence of any special damage to the plaintiff by the stoppage of its furnaces or otherwise. Furthermore, the contract with Hudson, February 27, 1880, was made at a time when the coke market was excited and in an extraordinary condition. Unexpectedly and suddenly coke had risen to the unprecedented price of four dollars per ton; but this rate was of brief duration. The market declined about May 1, 1880, and by the middle of that month the price had fallen to one dollar and thirty cents per ton. The good faith of the plaintiff in entering into the new contract cannot be questioned, but it proved a most unfortunate venture. By the last of May the plaintiff had in its hands more coke than was required in its business, and it procured—at what precise loss does not clearly appear—the cancellation of contracts with Hutchinson to the extent of 20,000 tons. As the plaintiff was not bound to enter into the new forward contract, it seems to me it did so at its own risk, and cannot fairly claim that the damages chargeable against the defendant shall be assessed on the basis of that contract.

The motion for a new trial is denied.