BISHOP C. PERKINS, Respondent, *v.* LEWIS W. MINFORD et al., Copartners under the Firm Name of MINFORD, LUEDER & COMPANY, Appellants.

Sales — breach of contract — damages — action by buyer to recover damages for seller's failure to deliver part of sugar purchased — when measure of damages is difference between contract price and market price at time of delivery — when fact that vessel, to be furnished by buyer, did not arrive at time fixed for shipment by the contract, not a defense.

1. Plaintiff contracted with defendant for the delivery of a quantity of sugar, title to which was to pass when it was delivered to the carrier at a Cuban port. Payment was to be and was made upon receipt by the buyer of the shipping documents on the basis of an assumed sugar content, adjustment to be made at the port of discharge. It

was found to be short on arrival at that port. Under such circumstances, the buyer may receive the balance, paying for it at the contract rate (Pers. Prop. Law [Cons. Laws, ch. 41], § 125), but he retains his remedy against the seller for his failure to deliver the whole amount (§ 130) and the measure of damages is the loss directly and naturally resulting to him in the usual course of events because of the seller's breach of contract. Generally, that is fixed by the difference between the contract and the market price at the time and place when and where the delivery should have been made. Owing to plaintiff's delay in providing a ship the sugar was not loaded and a bill of lading obtained until the month following the agreed time for shipment and plaintiff had no knowledge of the shortage in the weight of sugar until he received the bill of lading. In the meantime the price of sugar had advanced, and plaintiff brought this action to recover his loss resulting from the shortage in the weight of sugar actually shipped to and received by him. Under the circumstances plaintiff is entitled to recover damages measured by the price of sugar at the date of its earliest possible receipt by him. (§ 148.)

2. It is contended, however, that the plaintiff was to furnish shipping for the cargo in March, that he failed to do so and that the ship did not arrive until April twelfth, and was not loaded until the twentieth, and, hence, that the plaintiff should not profit by his own wrong. The plaintiff made no such agreement; the contract itself contemplated a reasonable delay and provided how compensation should be made if it occurred. Furthermore, it was defendant's duty to make delivery of the goods to the carrier. There is no pretense that this was done or any tender of the sugar made, or that the defendant had any part of it on hand ready to deliver before the arrival of the ship; nor is there any claim that any delay thereafter was because of the fault of plaintiff or of the carrier furnished by him.

*Perkins* v. *Minford,* 202 App. Div. 223, affirmed.

(Argued March 8, 1923; decided March 20, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 1, 1922, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court by increasing the same from $14,537.82 to the sum of $27,897.83.

*Benjamin F. Feiner* and *Ira Skutch* for appellants. Under the terms of the contract in suit, the place of

delivery was a regular northside Cuban shipping port, and the time of delivery the month of March, 1920, and the holding of the Appellate Division that the unnamed port of discharge and time of arrival thereat were the time and place of delivery is erroneous. (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413.) Even assuming that the place of delivery was the point of destination under this F. O. B. contract, the delay in the transportation of the sugars from March thirty-first to April twenty-seventh was due to the default of plaintiff's carrier in failing to arrive at Cuba until April twelfth and loading delays resulting therefrom, and plaintiff's damage required to be paid by defendants cannot be enhanced by such delay due to plaintiff's own default. (*Hamilton* v. *McPherson*, 28 N. Y. 76; *Johnson* v. *Meeker*, 96 N. Y. 97; *Allen* v. *McConihe*, 124 N. Y. 347.)

*Edwin De T. Bechtcl* and *A. Delafield Smith* for respondent. Judgment was properly directed by the Appellate Division on the basis of the eighteen and one-half cent rate, which was the rate both in Cuba and in New Orleans from April 18 to April 29, 1920. (*Birkett* v. *Nichols*, 184 N. Y. 315; *Schulder* v. *Ladew Co.*, 178 App. Div. 458; *Ralli* v. *Rockmoore*, 111 Fed. Rep. 874; *Northwestern Iron & Metal Co.* v. *Hirsch*, 94 Ill. App. 579.) The intent of the parties as expressed in the contract and their actions and dealings thereunder indicate that the parties contemplated that the time and place of delivery should be at New Orleans on April twenty-seventh. (*Marine Bank* v. *Wright*, 48 N. Y. 1; *Van Casteel* v. *Booker*, 2 Ex. 691; *Turner* v. *Trustees, etc.*, 6 Ex. 543; *Falke* v. *Fletcher*, 34 L. J. C. P. 146; *Goesler* v. *Schepeler*, 5 Daly, 476.)

ANDREWS, J. In October, 1919, the plaintiff contracted with the defendants for the purchase and shipment in

the succeeding March of 3,200,000 pounds of sugar at the price of 7⅛ cents per pound. The contract provided that the sugar was to be F. O. B. at a regular north Cuban shipping port. It was to be loaded on vessels furnished by the buyer, who was also to provide insurance. Its ultimate destination was not fixed and was, therefore, at the buyer's option. A possible reasonable delay in providing the shipping was contemplated. If that occurred the seller was to receive the actual cost incurred by the delay and also interest on the purchase price. Payment of this price was not to be postponed until the sugar reached the port of discharge. It was to be made upon the receipt by the buyer of the shipping documents. The price was fixed on the basis of an assumed sugar content. The actual content might be greater or less. Likewise the net weight of the sugar received might vary from that stated in the invoice. Weights and sugar content were to be finally determined at the port of discharge. Then the proper adjustments might be made.

Under this contract delivery of the merchandise was to be made and title thereto was to pass when it was delivered to the carrier at the Cuban port. (*Standard Casing Co. Inc.*, v. *California Casing Co., Inc.*, 233 N. Y. 413.) This is the general rule, subordinate of course to intention. We find nothing in the contract before us that adequately reveals an inconsistent purpose. We are referred to the provision with regard to the determination of the net weight and the sugar content at the port of discharge. This but provides for a final rearrangement, should it become necessary, of accounts between the parties.

When the sugar was actually placed aboard ship it was found to be short some 200,000 pounds. Under such circumstances the buyer may receive the balance, paying for it at the contract rate (Personal Property Law [Cons. Laws, ch. 41], sec. 125), but he retains his remedy against the seller for his failure to deliver the whole amount (sec. 130). The buyer's measure of damages is the loss directly

and naturally resulting to him in the usual course of events because of the seller's breach of contract. Generally that is fixed by the difference between the contract and the market price at the time and place when and where the delivery should have been made (sec. 148). Such was the rule we applied in the case cited above and under somewhat similar circumstances in *Seaver* v. *Lindsay Light Co.* (233 N. Y. 273), in both of which cases there was a total failure to deliver any part of the goods sold. The reason is clear. Usually, knowing of the breach of contract, the buyer may protect himself against the consequences of a rising market by buying from others. But what if he does not know? What if the delivery being made at a distance the buyer neither knows nor has means of knowledge that the contract has not been completed until he actually receives the goods or a bill of lading stating the amount shipped to him? What is the loss then directly and naturally resulting from the breach of the contract? This situation is one of those as to which an exception is made by section 148. " Special circumstances " are present, showing " proximate damages of a greater amount " than those provided for by the general rule. The time as to when the damages are measured is shifted. It is now the date when the buyer knew or should have known of the default.

In the case before us the market price of sugar rose rapidly from March until April 18. This price was the same at New Orleans and at north Cuban ports. Then during all the times important here it remained stationary. The sugar was finally shipped and the bill of lading obtained on April 20th. Until the latter was received there is no claim that the buyer knew of the shortage. Measured by the price of sugar in Cuba at this time, the damages found by the Appellate Division are concededly correct.

It is said, however, that the buyer was to furnish

shipping for the cargo in March. It failed to do so. The ship did not arrive until April 12, and was not loaded until the 20th. The buyer should not profit by his own wrong. There are two answers to this proposition. The buyer made no such agreement. As has been pointed out the contract itself contemplated a reasonable delay and provided how compensation should be made if it occurred. Further it was the seller's duty to make delivery of the goods to the carrier. There is no pretense that this was done or any tender of them made, or that the seller had them on hand ready for delivery before the arrival of the ship. Nor is there any claim that any delay thereafter was because of any fault of the buyer or of the carrier furnished by him.

The judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur.

Judgment affirmed, etc.