**SECOND NAT. BANK OF HOBOKEN v. COLUMBIA TRUST CO. S. FISHER & CO. v. SAME. SAME v. WIGRAM et al.**

(Circuit Court of Appeals, Third Circuit. March 20, 1923.)

Nos. 2859–2861.

**1. Banks and banking ⬤⟩191—Letter held letter of credit.**

A buyer of sugar to be imported by seller contracted to furnish at once a confirmed letter of credit in favor of seller with plaintiff bank and at his instance defendant bank wrote plaintiff: "We hereby guarantee the account of [buyer] to the amount of * * * covering their contract with [seller] for shipment of sugar." In reliance on such letter plaintiff established a foreign credit for seller, which was used in payment for sugar. *Held*, that the letter of defendant was a letter of credit.

**2. Banks and banking ⬤⟩191—In action on letter of credit, nonperformance of contract pursuant to which letter was given is immaterial.**

In an action based on a letter of credit, evidence of nonperformance of the contract, which was the cause of the letter being given, is immaterial and inadmissible.

**3. Banks and banking ⬤⟩191—"Letter of credit" need not be in stated form.**

A "letter of credit" is a letter authorizing one person to pay money or extend credit to another on the credit of the writer, and need not be in any particular form, if it is such in effect and intention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Letters of Credit.]

**4. Banks and banking ⬤⟩191—Breach of contract; interest.**

In an action on a letter of credit, pursuant to which plaintiff had received and paid for a shipment of sugar which defendant refused to accept and pay for, and which was then sold at market price, the measure of damages is the difference between the contract price and market price, and in such sum plaintiff is entitled to recover interest from the time of defendant's refusal to accept.

**5. Carriers ⬤⟩51—"Bill of lading" is both receipt and contract to carry.**

A "bill of lading" is both a receipt to the shipper and a contract between the shipper and carrier for carriage of the goods on the terms stated therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading.]

**6. Evidence ⬤⟩373(1)—Bill of lading, accepted by carrier for delivery, sufficiently authenticated.**

A bill of lading, accepted by the carrier at port of delivery as the one issued by it at port of shipment, and on which it makes delivery, in the absence of any claim of fraud, is sufficiently authenticated to justify its admission in evidence.

---

**7. Sales ⬭58—Bill of lading held conclusive proof of date of shipment under contract.**

In a contract for sale of sugar "to be shipped from Java during September," a provision, "The bill of lading to be considered proof of the date of shipment," *held* to make such bill conclusive proof.

**8. Sales ⬭83—Contract held to permit deviation by carrying ship.**

Where a contract for sale of sugar to be shipped from Java provided that shipment should be made either "direct and/or indirect, with all liberties as per bill of lading, with and/or without transshipment," evidence that the ship deviated from direct course *held* inadmissible as immaterial.

**9. Sales ⬭372—Expiration of time buyer was required to maintain confirmed credit held not defense to action by seller for breach of contract.**

In an action by the seller on a contract for purchase of sugar to be imported, which also required the buyer to maintain a confirmed credit in favor of seller until a certain date, that such time had expired without renewal before delivery was tendered *held* not to constitute a defense.

**10. Evidence ⬭385—Parol evidence not admissible to vary written instrument.**

In the absence of fraud, accident, or mistake, parol evidence may not be admitted to contradict or vary the terms of a valid written instrument.

**11. Sales ⬭384(7)—Seller not required to sell goods at once on anticipatory breach by buyer.**

On notice that a buyer of a merchantable commodity, to be delivered in the future, will not accept the goods, it is not the duty of the seller, in order to mitigate the damages, to sell the goods at once, but he may wait until the time for delivery.

**12. Evidence ⬭450(5)—Sales ⬭182(1)—Evidence showing date on bill of lading held admissible, and question was for jury.**

In an action, by the seller of sugar to be shipped from Java during August, for refusal of the buyer to accept delivery, where the bill of lading introduced by plaintiff contained the dates "August" and "September" in typewriting, one superimposed on the other, evidence was admissible to show which date was correct, and the question was one for the jury.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by the Columbia Trust Company against the Second National Bank of Hoboken. Judgment for plaintiff, and defendant brings error. Affirmed.

Action by the Columbia Trust Company against S. Fisher and Co. Judgment for plaintiff, and defendant brings error. Affirmed.

Action by William Arthur Wigram and others against S. Fisher & Co. Judgment for plaintiffs, and defendant brings error. Reversed, and new trial granted.

Merritt Lane, of Newark, N. J., and John J. Fallon, of Hoboken, N. J., for plaintiffs in error.

McCarter & English, of Newark, N. J. (James M. Gifford and Francis Woodbridge, both of New York City, and Arthur F. Egner, of Newark, N. J., of counsel), for defendant in error Columbia Trust Co.

Robert Louis Hoguet, of New York City, for defendants in error Wigram and others.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

⬭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·DAVIS, Circuit Judge. The second and third of the above-stated cases are based on contracts for the sale of sugar which are substantially alike. The first is based on a letter of credit issued in compliance with the terms of one of the contracts. The trial judge, at the close of complainants' testimony, struck out the defenses in all three cases and directed verdicts for complainants. The cases are here on writs of error to review the judgments based on those verdicts. Similar questions of law and fact are raised in all three cases and so they will be disposed of in a single opinion.

### Second National Bank v. Columbia Trust Company.

On April 7, 1920, S. Fisher & Co., of Hoboken, N. J., hereinafter called Fisher, entered into a written contract with Gordon, Woodroffe & Co., of New York City, hereinafter called Gordon, whereby Gordon sold to Fisher 100 tons of Java white sugar, to be shipped "from Java during September," and bill of lading "to be considered proof of date of shipment." Payment was to be made as follows:

"Net cash against invoice for approximate net shipped weights and delivery order under banker's confirmed letter of credit for $40,500 to be established in our favor with the Columbia Trust Company, New York, immediately. Any difference between approximate net shipped weights and net landed weights to be adjusted on receipt of weight master's certificate of weights. Credit to be in force until 31st December, 1920, and extended if required."

Pursuant to the terms of payment requiring a "confirmed letter of credit" to be immediately established, the Second National Bank of Hoboken, N. J., wrote the Columbia Trust Company of New York City on April 20, 1920, as follows:

"Attention of Foreign Credit Dept.:

"Referring to our telephone conversation of this afternoon, we hereby guarantee the account of Messrs. S. Fisher & Co. of this city to the amount of $40,500, covering their contract with Messrs. Gordon, Woodroffe & Co., for the shipment of sugar from Java during September, 1920. We agree to pay you this amount upon presentation of delivery order and proper document certified by transporting steamship company that the sugar is held by them subject to delivery on presentation of said order."

Three days after this letter of credit was established, upon request of Gordon, the Columbia Trust Company established a confirmed letter of credit with N. V. Handel, Maatschappij, Java, for account of Gordon, to the amount of $500,000, covering 1,600 tons of "Java white sugar." It is alleged that this transaction included the 100 tons of sugar sold by Gordon to Fisher and the $40,500 established in the letter of credit of the Second National Bank. Maatschappij shipped sugar to Gordon, in reliance on the letter of credit established by the Columbia Trust Company, and drew two drafts on it for the payment thereof, which were accepted and paid.

The price of sugar dropped considerably, and some time between January 1 and 4, 1921, Fisher wrote the Second National Bank, calling its attention to the fact that the letter of credit was to be in force only until December 31, 1920, and, since no request had been made for its extension, directed it "not to honor any drafts, letters of credit, guaranty, or other obligation for or on" its behalf. On January 4,

1921, the Second National Bank wrote to the Columbia Trust Company, incorporating in its letter a copy of the letter of Fisher to it. According to the entry permit, the 100 tons of sugar, covered by the letter of credit established by the Second National Bank, arrived in New York on the steamship Eastern Crown January 14, 1921.

On January 24, 1921, the bank refused to honor the letter of credit and pay the draft. So the sugar was sold for $14,898.90, which, less expenses of the sale, was credited against the draft. The trust company brought suit against the bank for the amount of the draft, and at the conclusion of the trial, as before stated, the trial judge struck out the defenses, and directed a verdict for $24,292.84, which represents the difference between the amount of the draft and the net proceeds of the sale of the sugar, with interest.

The assignments of error may be compressed into the following propositions:

[1] 1. The letter of April 20, 1920, from the Bank to the Trust Company was not a strict letter of credit, but a guarantee.

The importance of this contention lies in the fact that, if the writing is a letter of credit and the suit is based upon it, evidence of the nonperformance of the contract which gave rise to the letter is immaterial and inadmissible.

"If the letter is addressed to a particular person, who advances goods or money on it in accordance with its tenor, the latter becomes an available promise in favor of the person making the advance. When acted on, and the advances made in accordance with its terms, a contract is created between the writer of the letter and the party who has acted upon it, upon which an action can be maintained." American Steel Company v. Irving National Bank (C. C. A.) 266 Fed. 41, 43.

[2, 3] The action here is based on the letter, which created a contract between the bank and the trust company. If it was a letter simply guaranteeing the account, evidence of the nonperformance of the contract is admissible, and it was error for the court to overrule the offer to prove it. Merchants' National Bank v. Citizens State Bank, 93 Iowa, 650, 61 N. W. 1065, 57 Am. St. Rep. 284. A letter of credit is a letter authorizing one person to pay money or extend credit to another on the credit of the writer. A letter of credit may also be defined as:

"A letter of request whereby one person requests some other person to advance money or give credit to a third person, and promises that he will repay or *guarantee* the same to the person making the advancement." Lafargue v. Harrison, 70 Cal. 380, 384, 9 Pac. 259, 11 Pac. 636, 59 Am. Rep. 416.

Defendant contends that this writing is not a letter of credit, because it is not in the usual form of a letter of credit, and says:

"If the contract provision with respect to the letter of credit had been carried out as therein provided, S. Fisher & Co. would have gone to the Columbia Trust Company, and the Columbia Trust Company would have issued to Gordon, Woodroffe & Co. authority to draw on the Columbia Trust Company to the extent of $40,500 and charge it to the account of S. Fisher & Co."

But a letter of credit does not have to be in a particular form, if it is such in effect and intention (Violett v. Patton, 9 U. S. [5 Cranch] 141, 150, 3 L. Ed. 61), and in effect is a guaranty (Birckhead v.

Brown, 5 Hill [N. Y.] 634). The argument of defendant apparently proceeds as if the contract read:

"Banker's confirmed letter of credit for $40,500 to be established in our favor by (and not with) the Columbia Trust Company."

If the letter of credit was to be established *by* the Trust Company, then the letter would have been issued *by* the Columbia Trust Company, as defendant contends it should have been. But the contract of sale provides that a "banker's confirmed letter of credit for $40,-500 to be established in our favor *with* the Columbia Trust Company." In other words, Fisher was to establish a credit of $40,500 in favor of Gordon *with* the Trust Company, and that is exactly what was done. As a consequence the trust company issued its letter of credit to Maatschappij, authorizing it to ship on its credit for account of Gordon sugar covered by this credit established with the trust company by Fisher, on whose account the bank was acting.

Fisher undertook to furnish a banker's letter of credit for $40,500 in favor of Gordon *with* the trust company. Pursuant to that undertaking, the bank, at the instance of Fisher, wrote the letter in question to the trust company. It was sent by the bank and accepted by Gordon as a fulfillment of the contract, and on its authority the trust company gave credit to Gordon. The fact that the trust company gave credit to Gordon for a larger amount than was established with it by Fisher is immaterial, for Gordon was a wholesale dealer in sugar, and it may well be that additional credit had been established with the trust company in its favor by other purchasers. There was, therefore, on the one hand a proffer, and on the other hand an acceptance, which was regarded by everybody as a compliance with the contract, and which accomplished what both parties to the contract had in mind. Neither Fisher nor the bank may be permitted to say, to the serious damage of Gordon and the Trust company: Our solemn written obligation is not what we actually undertook and led you to believe we had performed. The letter, in substance, in effect, in intention and in conscience, was a letter of credit, upon the authority of which credit was given to Gordon. Violett v. Patton, supra. Being such, the suit between the trust company and the bank was based on it alone, and evidence of the nonperformance of the contract by Gordon was inadmissible.

The defense that, whether the letter be one of credit or guaranty, credit expired on December 31, 1920, and the complainant cannot prevail, because payment was limited to the duration of the credit, is untenable, for the reason that the suit is not between vendor and vendee, and is not based on the contract, but on the letter of credit, which does not contain the limitation of the contract. The bank's letter establishing a credit of $40,500 in favor of Gordon with the trust company was dated April 20, 1920. Three days later the trust company issued its letter of credit for $500,000 for the account of Gordon. We think that the evidence sufficiently establishes that this credit in favor of the account of Gordon was based in part on the bank's letter of credit of April 20, 1920, on account of which the

trust company, to that extent, entered into the obligation to Maatschappij. Whether or not it had actually paid for the sugar in question when this suit was instituted, it was legally bound to so so, and Maatschappij drew upon it for the price of the sugar.

2. Payment was to be made "upon presentation of delivery order and proper document certified by transporting steamship company that the sugar is held by them subject to delivery on presentation of said order," and these papers were not presented.

On January 17, 1921, three days after the arrival of the sugar, Gordon paid the collector of customs of New York $12,184.94 duty on the sugar, and it was thereupon released by the inspector. On January 24, 1921, there were presented to the president of the bank the following papers: An order, addressed to the clerk of the Eastern Crown, directing him to deliver 1,004 bags of sugar to the order of Gordon, and signed by the Green Star Steamship Corporation, owner of the Eastern Crown; a delivery order, addressed to the same clerk, directing him to deliver the 1,004 bags of sugar to the Columbia Trust Company, signed by Gordon, and indorsed by the trust company to the bank; an invoice showing the amount of $38,628.27 due on the sugar; and a draft for that amount on the bank in favor of the trust company. He refused to pay the draft and accept the sugar in the following language:

"I am very sorry we cannot pay this draft. We have been instructed by S. Fisher & Co. not to pay. I am sorry indeed to have any trouble with the Columbia Trust Company, but we cannot pay the draft."

We think that the presentation of these documents was a substantial compliance with the letter of credit. Further, the necessity for presenting them had been waived by the letter of the bank to the trust company on January 4, 1921, that Fisher had enjoined it from paying the draft when presented. Hartley v. James, 50 N. Y. 38. The purpose of this provision in the letter of credit was to assure the bank that the sugar had arrived and would be delivered to it when paid for. Of these facts there never was the slightest doubt. The truth is that the defendant did not want the sugar, and was trying to devise some means by which it could avoid taking it, and thus escape its obligation.

[4] 3. The court erred in including interest in the damages. The old common-law rule was that interest was not allowed on unliquidated damages in cases based upon either tort or contract. This rule has, however, been modified, and now the more liberal view prevails that interest will be allowed if the demand, liquidated or unliquidated, is of such nature that the damages were ascertained or could have been ascertained by simple computation, Philbrick v. Mundy, 93 N. J. Law 43, 106 Atl. 361; Horst Co. v. Breidt City Brewery, 94 N. J. Law 230, 235, 109 Atl. 727; Sullivan & Sullivan v. McMillan & Higgins, 37 Fla. 134, 143, 19 South. 340; 53 Am. St. Rep. 239; McMahon v. New York & Erie Railroad Co., 20 N. Y. 463, 469; Cox v. McLaughlin, 76 Cal. 60, 68, 18 Pac. 100, 9 Am. St. Rep. 164; Bernhard v. Rochester German Insurance Co., 79 Conn. 388, 65 Atl. 134, 8 Ann. Cas. 298.

Counsel states that:

"The court considered that the defendant bank was responsible for the difference between the contract price of the sugar and the market price. To this amount interest was added."

We think that the defendant was responsible for this difference. The ascertainment of this amount was a mere matter of calculation, and interest was, and should have been, allowed on it from the date·of the bank's refusal to accept and pay for the sugar to the entry of judgment.

We fail to find error, and the judgment of the District Court is affirmed.

### S. Fisher & Co. v. Columbia Trust Company.

This is a suit between the vendor and the vendee, involving the same sugar which was the subject of the litigation between the Second National Bank and the Columbia Trust Company, and is based on the contract for the sale of the sugar. This suit was brought as a precaution in case the trust company did not prevail in the other suit. Of the questions raised in this case we shall consider only those we did not discuss in the Second National Bank Case.

[5] It is contended that the learned trial judge erred in admitting in evidence the bills of lading without formal proof of their execution. They were issued in triplicate by the Green Star Steamship Corporation, or its agents, which controlled the steamship Eastern Crown, in which the sugar in question was brought from Samarang, Java, to New York City. A bill of lading is both a receipt to the shipper and a contract between the shipper and the carrier for the carriage of the goods on the terms mentioned therein. The Tongoy (D. C.) 55 Fed. 329; The Delaware, 81 U. S.·(14 Wall.) 579, 600, 20 L. Ed. 779; Pollard v. Vinton, 105 U. S. 7, 8, 26 L. Ed. 998.

[6] The bills of lading in question purport to be issued by the steamship company in Samarang and were received in due course of mail by the Columbia Trust Company. The proofs show that one of them arrived in a letter of advice to the Columbia Trust Company, and the other two with drafts drawn at Samarang, Java, by H. V. Handel Maatschappij, "Gan Kang Sioe," to the order of the Javashe Bank, and indorsed to the order of the Federal Reserve Bank, New York, and directed to the Columbia Trust Company. In order to get the sugar from the Eastern Crown it was necessary for the party holding the bills of lading to present one of them at the dock to the Green Star Shipping Corporation. Accordingly one was presented, and was accepted by that corporation as the bill of lading which it had issued covering the sugar in question and then on the steamship Eastern Crown. The amount of sugar called for by the bill of lading and that on the steamship corresponded exactly. In return for this bill of lading the authorized agent of the steamship corporation gave to the holder a delivery order authorizing the delivery clerk of the Eastern Crown to deliver the sugar to Gordon. Another bill of lading was presented to the collector of customs of the port of New York and accepted by him as the authority on which the duty on the sugar

was paid and the sugar released. The contract for the sale of the sugar provided for its shipment from Java on a "bill of lading" to be issued by the steamship corporation which brought the sugar from Java to New York. The acceptance of the bill of lading by the Green Star Corporation as the bill of lading issued by it at Samarang, Java, and covering the sugar in question, we think, in the absence of any hint or suspicion of fraud, sufficiently identifies its authenticity so as to justify its admission in evidence under the facts in this case.

[7] The defendant urges that the trial judge erred in holding that the bill of lading was conclusive proof of the date of shipment of the sugar. The contract provided that the shipment of the sugar was "to be made from Java, during September," and that "the bill of lading to be considered proof of the date of shipment." Counsel offered to prove that the "Eastern Crown did not leave the island of Java until * * * October 3d or 4th." This offer was overruled by the trial judge, on the ground that the contract made the bill of lading conclusive proof of the date of shipment, and in the absence of fraud the date on the bill was conclusive. The bill of lading shows the date of shipment from Samarang, Java, the "30th day of September, 1920." The question is: What was meant by the provision in the contract that the "bill of lading to be considered proof of the date of shipment"?

Does that mean that the bill of lading was to be considered merely as evidence of the date of shipment, and not conclusive proof of that date? If that is what it meant, it was utterly useless to include that provision in the contract. The date in the bill of lading would in any event be evidence of the date of shipment, and the parties to the contract must have intended something more by expressly providing that it should "be considered proof of the date of shipment." In a shipment of sugar from Java it would be difficult and troublesome to prove the date of shipment, in case of dispute, and the inclusion of this provision in the contract was doubtless done to prevent just such a contingency as has arisen by making the date of shipment in the bill of lading "proof" conclusive, and in the absence of fraud, which was disavowed by the defendant, the date in the bill of lading must be construed as absolute proof of the actual date of shipment. As a matter of fact counsel did not offer to prove that the sugar was not *delivered* to the Eastern Crown and the bill of lading *issued* on the date it bears, but that the steamer did not *leave* the Island of Java on that date. If the shipper delivered the sugar to the steamship and received the bill of lading as its receipt, and the steamship lay there a day or two until it secured a full load, that, under the facts of this case, was a substantial compliance with the terms of the contract.

[8] The defendant further contends that the District Court erred in overruling the offer to prove that delivery was not made within reasonable time; that it was understood that payment should be confined to the letter of credit which expired December 31, 1920, without extension; that it had the right to abandon the contract and purchase sugar elsewhere; and that it was the intention of the parties that the sugar should be delivered in time for use in the Christmas

holiday trade by the defendant. The contract provided that shipment should be made either "direct and/or indirect with all liberties as per bill of lading with and/or without transshipment." Counsel offered to prove that the Eastern Crown, in coming to the port of New York from Java, "stopped at a great many ports in Europe out of the way. She came in a very indirect route from Java." If these facts could have been proved, it would not have constituted a defense; for the contract permitted the boat to come by a route direct or indirect, with or without transshipment, and so what counsel offered to prove was expressly provided for in the contract.

[9] Complainant is not suing the defendant on the credit which was established. Therefore proof of the expiration of the credit without extension did not justify the abandonment of the contract, the refusal to accept the sugar contracted for, and the purchase of it elsewhere.

[10] The trial judge properly overruled the offer to prove that it was the intention of the parties that the sugar should be delivered in time for use in the Christmas holiday trade. The undertaking of the parties was reduced to writing, and counsel is attempting to vary, or add to, a written document by parol evidence. Parol evidence, in the absence of "fraud, accident, or mistake," may not be admitted to contradict or vary the terms of a valid written instrument. Greenleaf put this fundamental principle of law into an admirable statement, which has many times been approved by the Supreme Court:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly of one of the parties, is rejected." 1 Greenleaf on Evidence (16th Edition) § 275.

See De Witt v. Berry, 134 U. S. 306, 315, 10 Sup. Ct. 536, 33 L. Ed. 896; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 318, 22 Sup. Ct. 133, 46 L. Ed. 213. In the case of Brady v. Kern, 222 Fed. 873, 138 C. C. A. 299, Judge McPherson, of this court, said:

"It is almost always true that a written contract has been preceded by parol negotiation and that the terms of the contract are thus agreed upon before they are reduced to writing. Of course, the parties may leave the transaction in parol, and if they adopted this course the contract must be proved by oral testimony in the usual manner; but, if they put the complete contract into writing afterwards, they may not contradict or vary the writing, unless fraud, accident, or mistake has supervened."

Fraud was disavowed; neither accident nor mistake has been alleged. Therefore the offer was properly overruled. It was established by competent testimony that the "T. M. O." and "G. W." were simply plantation marks, and do not in themselves indicate quality. The evidence established that the sugar was of very good quality and

in perfect condition. We are of opinion that the trial judge properly refused the non-suit.

In view of the fact that this suit was instituted as a precaution, and covers the same sugar involved in the case of the Second National Bank v. Columbia Trust Company, there may be only one satisfaction of the debt. With that limitation on the judgments, the judgment of the District Court is affirmed.

### S. Fisher & Co. v. William Arthur Wigram.

This case is based on a contract substantially identical with the one involved in the preceding case. The facts are practically the same in both cases. There are only two questions in this case which did not appear in the other two.

It is argued that the learned trial judge erred in the measure of damages adopted. The defendant contends that it breached the contract on August 31, 1920, and that it was the duty of the complainant to take steps at that time to minimize the damages by "liquidating" or reselling the sugar, and not to wait until the time of delivery, when the price of sugar had fallen still lower; that the measure of damages was the difference between the contract price of sugar and the market price on August 31, 1920, and not at the time of delivery, when that difference was greater.

The facts out of which this contention arises are these: The contract provided as to payment:

"Net cash against invoice for approximate net shipped weights and delivery order under banker's confirmed letter of credit for $51,000, to be established with Brown Bros. & Co., 59 Wall St., New York City, immediately."

The letter of credit was not established immediately, and complainant wrote defendant on July 2 and 22, 1920, calling its attention to that fact. On August 24, 1920, it wrote the following letter:

"This action on your part is taken to indicate an intention on your part not to carry out this important condition of the contract. We desire to give you every opportunity to protect your interest and at the same time find it necessary in justice to ourselves to protect our own position. We therefore now give you notice that unless the letter of credit is furnished as required by the contract on or before the 31st day of August, 1920, we shall regard you as having defaulted in the performance of the contract and shall act accordingly."

Again on August 31, 1920, it wrote:

"In view of your failure to furnish the letter of credit as therein described and as required by your contract dated May, 1920, we beg to say that we now regard the contract as broken by you and that we shall avail ourselves of all legal rights accruing from your default."

[11] It is conceded by defendant that the general rule is that the measure of damages upon a breach of contract for the sale of goods by a purchaser is the difference between the contract price and the market price at the time and place of delivery. But it is urged that this general rule does not apply for the reason that defendant breached the contract in August, 1920, and complainant could and should have taken steps at that time, before the price of sugar dropped lower, to

minimize the damages. Counsel further offered to prove special circumstances that took, he claims, the case out of the general rule as to the measure of damages provided by the Sale of Goods Acts of New Jersey (4 Compiled Statutes, 4662) and New York. But the offer did not disclose what the exact facts, constituting the special circumstances, were; nor have facts anywhere been disclosed sufficient to take the case out of the general rule. What defendant is really seeking is to take advantage of its own wrong. It is true that on the breach of a contract it is the duty of the injured party to use due diligence to reduce the damages to be paid by the party in fault. The Oregon, 55 Fed. 665, 673, 5 C. C. A. 229; Wicker v. Hoppock, 73 U. S. 94, 99, 18 L. Ed. 752; Warren v. Stoddard, 105 U. S. 224, 228, 26 L. Ed. 1117. But on August 31, 1920, complainant did not know with any degree of certainty whether or not the price of sugar would rise or fall or whether the damages would at a later date be less or greater. It was not required to gamble on the market, at its own risk, for the benefit of the defaulting defendant. If it had done so and a greater loss had occurred, this would have been borne by complainant and not by defendant. Missouri Furnace Co. v. Cochran (C. C.) 8 Fed. 463. Upon notice of a vendee of goods to be delivered in the future that he will not accept them and perform his contract of sale, it is not the duty of the vendor, in order to mitigate the damages, at once to resell the goods. The exception to the general rule is without practical application to the facts of this case. Saxe v. Penokee Lumber Co., 159 N. Y. 371, 54 N. E. 14; York Draper Mercantile Co. v. Lusk, 6 Kan. App. 629, 49 Pac. 788. Sedgwick on Damages (9th Ed.) p. 1257; Williston on Contracts, p. 248; 2 Sutherland on Damages (4th Ed.) 2225.

[12] The second question raised in this case is that the trial judge erred in holding that the date in the bill of lading was conclusive proof of the actual date of shipment. This is a suit between the vendor and the vendee, based upon the contract of sale, and in order to prove the performance of the contract the vendor offered in evidence the bill of lading to establish that it complied with the contract in shipping the sugar in "August," 1920. The contract provided that shipment was "to be made during August direct and/or indirect from Java." The defendant offered to prove that the Honolulu Maru, the steamer on which the sugar was shipped, "was never at the port of Samarang during the month of August, 1920, and that shipment was not made from that point on that vessel on that day, as stated in the bill of lading or on any day during that month; that the Honolulu Maru left Java, the port of Sourabaia, on the 17th day of September, 1920." But for a fact, to be noted later, the date of shipment contained in the bill of lading should be held to be conclusive proof of the actual date of shipment as in the other case.

The defendant objected to the admission of the bill of lading on the ground that it showed upon its face that the date had been changed from "September" to "August." The words "September" and "August" both appear on the bill of lading in typewriting. One is superposed on the other. Whether "August" was written over "Septem-

ber," or "September" over "August," may be a question of dispute, but that the word "September" was written in at one time, and the word "August" at another time, cannot be disputed. They are both plainly visible. The question of fact to be determined was whether the original, and so the correct, date on the bill of lading was "August" or "September." It must be the one or the other, both cannot be; either may be. If the original was "August," then that must be accepted as conclusive proof of the date of shipment and a compliance with the contract. If the original was "September," that is likewise conclusive proof. In that event the vendor did not comply with the terms of the contract and cannot prevail. Whether "August" or "September" be the original and correct date can only be determined from the evidence, and the determination of that issue was a question, under all the evidence, for the jury, and not for the court. It was therefore error to overrule the offer and to strike out the offense.

Accordingly, the judgment of the District Court is reversed, and a new trial granted.