**UNITED STATES of America,**
**Plaintiff,**

v.

**U. S. FOREIGN CORPORATION,**
**Defendant.**

Civ. No. 72–215.

United States District Court
S. D. New York.

Jan. 30, 1957.

Paul W. Williams, U. S. Atty., for the Southern Dist. of N. Y., New York City (by John H. Carroll, Asst. U. S. Atty., New York City, of counsel), for plaintiff.

Kupfer, Silberfeld, Nathan & Danziger, New York City, for defendant.

SOLOMON, District Judge (sitting by designation).

This is an action by the United States to recover the damages it sustained when the defendant U. S. Foreign Corporation refused to comply with a contract to supply the Government with twenty million pounds of flour. U. S. Foreign Corporation defended at the trial on the ground of unilateral mistake, but the jury in response to special interrogatories found that no mistake had been made. The only remaining issue in the case concerns the measure of damages.

The Commodity Credit Corporation (C.C.C.) is an agency of the United States government which handles purchases in the commodity market on behalf of those governmental agencies requiring such services. Late in 1949 it sent out to commodity suppliers invitations to offer flour for delivery at certain named ports on December 24 of that year. U. S. Foreign Corporation offered to supply almost the entire

amount, and a contract was concluded on December 2. When U. S. Foreign Corporation tried to find the flour to fulfill the contract, it discovered that the price it had bid was below the market price for flour of the type specified, and told the C.C.C. they would not comply with the contract. The C.C.C. immediately contacted the trade and requested new bids. After receiving such bids, it entered into new contracts with the low bidders for the flour at the same delivery points and for the same delivery date. The price of the replacement flour was $61,704.31 more than the price at which U. S. Foreign Corporation had agreed to sell it.

U. S. Foreign Corporation does not dispute the accuracy of the Government's proof of replacement cost or the fact that it fairly represented the market price at the time. However, it contends that replacement cost and market value on December 5 are irrelevant to the issue of damages. It asserts that the proper measure of damages is the market value of the flour as of December 24, the agreed date of delivery. Since no evidence of this price was introduced, U. S. Foreign Corporation concludes that the Government has failed to establish the crucial element of damage, and asks for a judgment accordingly.

U. S. Foreign Corporation cites as authority for its position the Uniform Sales Act as adopted by New York, particularly Personal Property Law, McK. Consol.Laws, c. 41, § 148 subd. 3. Although I am not convinced that New York law would support U. S. Foreign's contention if applicable, it is unnecessary to consider the question because New York law does not control this case.

■ The exercise by the United States government of its constitutional functions is subject to regulation only by federal law, and is not controlled by

1. 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. There are two federal cases on the point, both in other circuits. See Missouri Furnace Co. v. Cochran, C.C.W.D.Pa. 1881, 8 F. 463, applying market price

state law within the rule in Erie R. Co. v. Tompkins.[1] Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838. Therefore, the law applicable to government contracts made pursuant to proper authority is the general federal law of contracts, unless Congress has set a different rule. Priebe & Sons, Inc., v. United States, 1947, 332 U.S. 407, 68 S.Ct. 123, 92 L. Ed. 32; United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209.

■ The general principle governing the measure of damages for failure to deliver goods is undisputed; it is well stated in the Uniform Sales Act, § 67(2), 1 Uniform Laws Annotated: "The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract." The amount of this loss can ordinarily be determined by comparing the contract price with the market price at the time the goods should have been delivered. Marsh v. McPherson, 1881, 105 U.S. 709, 26 L.Ed. 1139; American Mfg. Co. v. United States Shipping Board Emergency Fleet Corporation, 2 Cir., 1925, 7 F.2d 565.

■■ This latter rule supplies a convenient standard to use when the same goods are not repurchased elsewhere. The present case raises the question whether the rule should also be applied in a case in which the actual loss has been determined by repurchase of same or equivalent goods from another or even the same source of supply. In such a case, should the actual cost of replacement or the market price on the agreed delivery date be used as the standard for determining loss?

On this point there is no federal precedent binding upon us,[2] and the state jurisdictions are divided.[3] However,

on delivery date; and Sawyer v. Eaton, 1 Cir., 1923, 293 F. 898, same rule, but admitting replacement cost as evidence of market value.

3. See discussion and cases cited 46 Am. Jur., Sales § 681 (1943 ed.).

the commercial necessities are clear. In situations in which supply arrangements must be made in advance of need, the buyer must look elsewhere for his goods when his seller repudiates the contract prior to delivery. He cannot wait until the delivery date before making other arrangements without incurring additional losses for lack of the needed item.

The present case is an excellent example of such a situation. The Government was purchasing flour for export from certain ports at a certain time. For the Government to discharge its commitments, the flour had to be at the proper ports at the proper time. Otherwise, the purpose in shipping the flour might have been frustrated and the Government might have been held liable on its shipping arrangements. Under these circumstances it could not afford to wait until the agreed delivery date to buy the flour elsewhere.

For these reasons, the ability to make and rely upon contracts for future performance is essential. To hold that such contracts may be breached before the time for performance without liability for the higher cost of alternative arrangements would seriously affect the reliability of this type of contract and with it the efficiency of our economy. Looking to our cardinal principle that the measure of damages for failure to deliver goods shall be the loss directly and naturally resulting in the ordinary course of events, it is apparent that in a situation in which there is an anticipatory breach resulting in the making of substitute arrangements, the difference between the original contract price and the replacement cost is a proper measure of damages.[4]

There is ample evidence in the record that the Government by invoking competitive bidding used due diligence to obtain the lowest possible replacement cost.

Plaintiff is entitled to judgment in the amount of $61,704.31 plus interest.

4. Kansas Flour Mills Co. v. Brandt, 1916, 98 Kan. 587, 158 P. 1120, L.R.A.1917A, 1000. An analogous situation which would warrant (and has been given) similar treatment is one in which the buyer of a shipment of goods did not become aware that the shipment was short until after the agreed date of delivery, due to the seller's fault. There the market value on the day the shortage became known to the buyer rather than market value on the agreed delivery date has been held to be the measure of the loss "directly and naturally resulting from the breach of the contract." See Perkins v. Minford, 1923, 235 N.Y. 301, 139 N.E. 276.