Pedro Mora y Ledon et al., Appellants, v. Frederick C. Havemeyer et al., Respondents.

Plaintiffs contracted to sell, and defendants to purchase, a quantity of sugar "for shipment within thirty days, by sail or steam, seller's option," from some port in Cuba to defendants in New York. The sugar was loaded, within the thirty days, and the master of the vessel delivered to plaintiffs a bill of lading certifying to the shipment "in good order and condition," but the vessel was detained several days after by the charterer, without the knowledge or consent of plaintiffs, seeking for freight to fill out her cargo. Defendants declined to accept the sugar and bills of lading when tendered to them, on the ground that the terms of the contract were not complied with. In an action upon the contract the court directed a verdict for defendants on the ground that the sugar was not shipped within the thirty days. Held, error; that the contract required the putting the goods sold within thirty days on board a vessel bound for New York, with the intent, in good faith, to have them cleared for the port of destination in the regular course of trade or in a reasonable time after the shipment; that it did not require the clearance of the vessel as well as the loading within the stipulated time; that plaintiffs were not required to hire a ship specially for the transportation of the sugar, if that object could otherwise be reasonably obtained, and as the quantity contracted for was not sufficient to complete a cargo, they were authorized to select a vessel which they had reason to suppose would sail within a reasonable time, and which had, or could obtain, a full cargo, and thus diminish the charges on their consignment.

(Argued March 17, 1890; decided April 15, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the second Monday of November, 1888, which affirmed a judgment in favor of plaintiffs entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for alleged breach of a contract in writing, which is in words and figures following:

"Dated New York, February 7, 1885.

"Sold for account of Messrs. Mora Ona and Co. through Messrs. Perkins and Welsh to Messrs. Havemeyer and Elder.

"About 1000 tons Cuba Muscavado Sugar for shipment within 30 days by sail or steam sellers' option, at $2\frac{7}{8}$ c. U. S. Cy., cost and freight net landed weights basis 3 days sight drafts against shipping documents, and basis 89° test; no mark to test under 87, adding $\frac{1}{32}$ c. or deducting $\frac{1}{20}$ c. lb. per degree above or below 89°, fractions in proportion.    Buyers to provide Marine Insurance."

The material facts are stated in the opinion.

*Noah Davis* for appellants.    Under the contract the title to the sugar passed, on delivery of the same to the steamer for transportation.    (*Crofoot* v. *Bennett*, 2 N. Y. 258; *Burrows* v. *Whitaker*, 71 id. 291; *Bradley* v. *Wheeler*, 44 id. 495; *Riddle* v. *Varrun*, 20 Pick. 280.)    The question as to passing of title is one of intent, although the weight, measure or quality of articles remains to be ascertained.    (*Caulkins* v. *Hellman*, 47 N. Y. 452; *Mee* v. *McNider*, 109 id. 500.)    A contract for shipment within a given period is not determined by the date of the sailing of the ship.    (*Bowers* v. *Shand*, L. R. [2 App. Cas.] 455–483.)    The word "shipment," when used in connection with a transaction between shipper and master or carrier, means the delivery of property for transportation on freight to the master of a vessel seeking cargo. When used in connection with a contract of sale and purchase, it means the delivery to the master or carrier for transportation, the putting the same on board, and the making by the master and delivery to the shipper of a bill of lading or shipping documents therefor.    When the several things are done the shipment is complete, even to the utmost requirement between buyer and seller in cases where shipment transfers the title of the property.    (*Bowers* v. *Shand*, L. R. [2 App. Cas.] 455; *Hill* v. *Blake*, 97 N. Y. 221; *Fisher* v. *Minot*, 10 Gray, 260; *Bothlingk* v. *Inglis*, 3 East. 381; *Stubb* v. *Land*, 7 Mass. 453; *Newhall* v. *Vargas*, 13 Me. 105; *Tobias* v. *Lissberger*, 105 N. Y. 404.)    There is not a case where any court has held that the word "shipment" or the phrase "to be shipped" include the actual sailing of the vessel,

so that in legal contemplation the cargo is not shipped till the voyage has actually commenced. (100 N. Y. 186; *Reuter* v. *Sala*, L. R. [4 C. P. Div.] 239; *Bowers* v. *Shand*, L. R. [2 App. Cas.] 455; *Hill* v. *Blake*, 97 N. Y. 216.) The contention of the defendants that they entered into the contract in expectation of the arrival of the sugar at New York at a certain time, and that they were prejudiced by the falling market, is without merit. (*Cunningham* v. *Judson*, 100 N. Y. 179.)

*John E. Parsons* for respondents. In this case the contract was for the purchase in New York of sugar to be transported by the plaintiffs from Cuba to New York, and there to be delivered to the defendants. In such a case shipment within thirty days means that within that time the sugar shall be started by ship from the place from which it is to be transported. (*Tobias* v. *Lissberger*, 105 N. Y. 404, 411, 412; *Pope* v. *Porter*, 102 id. 366–370; *Norrington* v. *Wright*, 115 U. S. 188–205; *Cunningham* v. *Judson*, 100 N. Y. 179–189; *Hill* v. *Blake*, 97 id. 216–222; *Hoare* v. *Rennie*, 5 H. & N. 19; *Phillips* v. *Taylor*, 17 J. & S. 318.) The cases which hold that "shipment" means loading or putting on board will be found to involve either bills of lading or contracts, the context of which show that that was what was intended by the parties. (*Rommel* v. *Wingate*, 103 Mass. 327; *Welsh* v. *Gossler*, 89 N. Y. 540; *Sears* v. *Wingate*, 3 Allen, 103; *Sheppard* v. *Naylor*, 5 Gray, 591; *P. Bank* v. *Stubbs*, 6 Mass. 422; *Bradstreet* v. *Heron*, 2 Blatch. 116; *Grant* v. *Norway*, 10 C. B. 665; *Lickbarrow* v. *Mason*, 1 H. B. 360; *Berkley* v. *Watling*, 7 Ad. & El. 29.)

RUGER, Ch. J. The sole question involved in this case is the interpretation to be given to the language, "for shipment within thirty days by sail or steam, seller's option," as used in an executory contract for the sale by the plaintiffs to defendants of 1,000 tons of Cuba Muscovado sugar, upon which the buyers were to provide marine insurance. The contract was made on February 7, 1885, in New York, where

the vendees resided, the vendors being residents of Cuba, and the sugar was intended to be shipped from some port in that island to the defendants at New York.

The evidence shows that the shipment of the sugar was begun on the steamer Gladiolus, at Sagua, in Cuba on the 5th and completed on the 7th day of March, 1885, when the master of the vessel delivered to the plaintiffs a bill of lading certifying to the shipment "in good order and condition by Messrs. Mora, Ona & Co. (the plaintiffs), for account and risk of Messrs. Havemeyers & Elder (the defendants), on board the Br. steamer called the Gladiolus, whereof Sinclair is master, now lying at the port of Sagua LaGrande, Cuba, and bound for New York,  *  *  *  1500 hogsheads of Muscovado sugar." The steamer did not, in fact, clear from the port until the thirteenth of March, and arrived in New York on the seventeenth of the same month. It further appears that the full capacity of the Gladiolus was 1,500 tons, and freight room to New York for 1,000 tons only was hired of her charterer by the plaintiffs. It also appeared that the vessel was detained by the charterer, without the knowledge or consent of the plaintiffs, so far as appears, at Sagua, for six days after the sugar was shipped, seeking for freight to fill out her complement. The sugar and bill of lading were duly tendered to the defendants in New York, by the plaintiffs' agents, on the day of the arrival of the Gladiolus in that city, and they refused to receive them, upon the grounds stated in a letter, of which the following is a copy:

"NEW YORK, *Mch.* 17, 1885.

" Messrs. PERKINS & WELSH, Agts. :

"GENTLEMEN — We beg to enclose drft & documents for the cargo Gladiolus. We decline to accept the cargo, as the terms of the contract were not complied with. The ship should have cleared the 10th inst., at the latest, and was detained seeking cargo much beyond a reasonable time *after shipment.*

" Yours very truly,

"HAVEMEYERS & ELDER."

Other evidence was given upon the trial, but none which bears upon the point involved in the case. After the evidence was closed the defendants asked the court to direct a verdict for them, upon the following grounds:

First. That the plaintiffs failed to comply with the contract of sale.

Second. That the contract required shipment within thirty days, and it appears that the sugar was not shipped until after the expiration of that time.

The court granted the motion and the plaintiffs duly excepted thereto. The judgment entered upon this verdict was affirmed at General Term, and from that affirmance this appeal is taken.

Upon the trial the plaintiffs objected to the direction of a verdict by the court, and if there was any evidence in the case presenting questions of fact, it was error for the trial court to take it from the jury. The motion for a verdict was put by the defendants upon a single ground, viz.: That the evidence did not show a shipment of the sugar by the plaintiffs within thirty days after the date of the contract, and the determination of this appeal depends upon the question whether such shipment was made within the time mentioned. If the ground stated be literally construed, it is obvious that it has no support in the evidence, for the sugar was concededly shipped within the thirty days. If we refer to the defendants' letter of refusal, we find that the shipment of the sugar within the stipulated time is distinctly conceded; but they claim that the non-performance of the contract referred to consisted in the fact that the vessel did not sail immediately after the expiration of the thirty days, and the question to be determined is, whether the language of the contract required the clearance of the vessel, as well as the loading of the ship, within the stipulated time. This was the ground upon which the trial court based its judgment, and the General Term have placed their affirmance substantially upon the same ground. Some allusions are made in the opinion below to the *bona fides* of the shipment; but the question, if in the case at all, was a dis-

puted question, and could not be made a reason for sustaining a judgment which might otherwise be erroneous. If there was evidence in the case tending to show bad faith on the part of the plaintiffs in making the shipment, it presented a question of fact for the jury, upon which the parties were entitled to take their verdict.

We think the language of the contract is not susceptible of the construction given to it by the courts below. This contract, like all others, must be construed with reference to the intent of the parties making it, and if its language is plain and unambiguous, it must be given that construction which the language fairly imports, and the question of its meaning is a question of law for the court. That meaning, we think, is the putting the goods sold on board a vessel bound for New York, with the intent, in good faith, to have them cleared for the port of destination in the regular course of trade, or in a reasonable time after the shipment.

The appellants claim that the place of delivery for the goods sold under this contract was the sailing port, and that when they were shipped in conformity to the terms of the contract, title passed to the vendees and the goods were thereafter to be transported at their risk. This is claimed to have been indicated, among other provisions, by that requiring the vendees to make marine insurance. (*Mee* v. *McNider*, 109 N. Y. 500.)

It is unnecessary to decide this question as it has no controlling influence over the signification of the word "shipment" as used in the contract. That question, we think, is made clear by general usage and the uniform course of authority on the point. There is nothing in the language used in the contract, or in the surrounding circumstances, to indicate that the vendors were expected to exercise any control over the clearance of the vessel, or her subsequent management. That event might be governed by the condition of the tide; the direction of the wind; the facilities for clearance, and many other circumstances over which the vendors had no control and could not have had been supposed to have

had when the contract was made. These were matters for the judgment of those navigating the vessel. No qualifying adjectives are prefixed to the word "shipment" in the contract and it clearly defines the kind of shipment intended to be made; which was one made upon a steam or sailing vessel within thirty days from the date of the contract. It is, of course, implied by this language, and the surrounding circumstances, that the shipment was to be made in Cuba, upon a vessel bound for New York, and if there was no regular line making trips to the port of destination from the shipping port, that the plaintiffs would supply, in some way, the means of transportation to perform the service required. In an ordinary contract for the sale of goods to be shipped from one place to another, between which there are regular lines of transportation, it would not be supposed that the vendor was under obligation to exercise control over the medium of transportation after the goods were delivered to the carrier, or be responsible for delays in forwarding them to their place of destination. In the absence of regular lines of transportation some variations in the obligations of the vendor would be necessary, and those rules should be applied which are reasonable under the circumstances of the case and such as would naturally be indicated by the nature and requirements of the contract. In cases where the vendor is to pay the freight and the goods sold are not sufficient to complete a cargo, it would seem to be reasonable that, in his own interest, he should be authorized to select a vessel, which had, or could obtain a full cargo and thus diminish the charges on his consignment. We think the plaintiffs, under this contract, were not required to hire a special ship for the purpose of transporting the goods, if that object could be otherwise reasonably attained; but they, undoubtedly, would be bound to ship on some vessel destined for the port of New York, which they had reason to suppose would sail within a reasonable time after the shipment had been made. In a case where the goods sold would not constitute a full cargo, it would seem to be a sufficient compliance with the contract to put them within the specified

time for shipment on board a vessel bound for the intended port and engaged in an honest effort to obtain a cargo for such port. If the vendors in good faith shipped goods upon such a vessel, having reason to suppose she would sail within a reasonable time after shipment, we think it would be all the vendees could require under the contract, and if they desired a more speedy performance it should have been specially provided for by agreement. There is no language in the contract requiring the clearance of the vessel or the arrival of the goods at any particular time, and the option given to the vendors to ship by sail or steam evidently contemplated some latitude in respect to the time for the arrival of the goods in New York. A shipment by steam on the eighth of February, or by sail on the ninth of March, would, either, have brought the vendors within the strict terms of the contract. The possible time for the receipt of the goods by the vendees would in case of an immediate clearance under these conditions, have fluctuated between the twelfth day of February, and the last days of the succeeding March, and shows some indifference on their part as to the particular time of their arrival in New York.

It seems, therefore, quite clear that the goods arrived in New York and were tendered to the vendees within the time contemplated by the contract for their arrival, and the defendants have not been injured by delay in their shipment, unless the terms of the contract have in some way been violated by the plaintiffs. To bring themselves within this exception, the defendants claim that the word "shipment," as used in the contract, means a clearance of the vessel, as well as the putting the goods on board, within the period allowed for shipment. The words "shipment" and "shipped" are now used indifferently to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, over land as well as water, and imply, with respect to carriage by land, a completed act, irrespective of the time or mode of transportation. (*Caulkins* v. *Hellman,* 47 N. Y. 452; *Fisher* v. *Minot,* 10 Gray, 260; *Schmertz* v. *Dwyer,* 53 Penn. St.

335.) The same signification is, so far as we have discovered, uniformly been given to them by lexicographers, when applied to transportation either by land or water. Thus, Webster defines "shipment" to mean: "The act of putting anything on board of a ship or other vessel." Worcester: "The act of shipping or putting on board a ship." Abbott's, Bouvier's, and Rapalje and Lawrence's Law Dictionaries, each give substantially the same definitions.

We have been referred to no authorities supporting the defendants' contention, and we believe it to be contrary to the invariable meaning of the word as defined by lexicographers, as understood by the mercantile community generally, or as laid down in the decisions of the courts. A leading case on this subject in England is that of *Bowes* v. *Shand* (L. R. [2 App. Cas.] 455), which seems to us to be in point. The contract in that case provided for the purchase of a quantity of rice " to be shipped at Madras * * * during the months of March and April;" and the question was whether rice mainly put on board during the month of February, with bills of lading taken therefor, was a compliance with this contract, although a small part of the cargo was not put on board, nor did the vessel sail until the month of March; and it was held that it was not. The case was ably and exhaustively discussed by the Lord Chancellor and the Law Lords generally, and the court were unanimously of the opinion that the word "shipped," according to its natural and ordinary signification, as well as its meaning in the mercantile community, was the putting of the goods on board the vessel and taking a bill of lading therefor; and it was accordingly held that rice put on board in February was not shipped in March or April, although the vessel did not, in fact, sail until March. Delivering an opinion in that case, Lord HATHERLY quite emphatically said: "I think the meaning of the word 'shipped' is sufficiently understood by this time in commerce. But if it were needed, I think we have sufficient evidence before us that by the word 'shipped' all the witnesses understand *put on board.*" Evidently, if the sailing of the vessel containing the cargo was

any part of. the act of shipment, that case should have been otherwise decided.    To a similar effect was the case of *Reuter* v. *Sala* (L. R. [4 C. P. Div.] 239).    Chief Justice SHAW, in *Fisher* v. *Minot* (10 Gray, 260), says: " The word ' shipped,' in common maritime and mercantile usage, means 'placed on board of a vessel for the purchaser or consignee, to be transported at his risk;' and such a delivery is a constructive delivery to the purchaser.    *    *    *    'Shipment' means delivery on board." (*Stubbs* v. *Lund*, 7 Mass. 453 ; *Newhall* v. *Vargas*, 13 Me. 105.)

It has been urged by the respondents that the case of *Tobias* v. *Lissberger* (105 N. Y. 404) is in conflict with this definition, but we do not so regard it.    In that case the contract was for the sale of " about 100 tons of old iron vignol rails for prompt shipment by sail from Europe."    The term "shipment" was there qualified by the word "prompt," and it was held, the vendor having an option of ports from which to ship, that a delivery of iron on board a vessel in a port blockaded by ice, which could not in the regular course of nature be opened for an indefinite period, was not a " prompt shipment" within the meaning of those terms.    The distinction between the. cases is too obvious to need comment.

The respondents have referred to certain evidence, which, it is suggested, tended to show bad faith on the part of the plaintiffs in making this shipment.    There is certainly not sufficient evidence of that kind to make a question of law for the court, and it would be going quite as far as is warranted to say there is enough to carry it to a jury.

The judgment of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.