S. L. JONES & Co., INC., Plaintiff, *v.* ARTHUR E. WINTER and Another, Individually and as Copartners Doing Business under the Name and Style of WINTER, ROSS & COMPANY, Defendants.

First Department, May 2, 1924.

Sales — action by seller to recover for refusal to accept — sale of tin to be shipped from China within two months from April 10, 1920 — contract provided for establishing letter of credit immediately in favor of person from whom seller was to purchase — contract provided that if delay was caused in shipment by delays en route or other contingencies beyond seller's control shipment should be made at first opportunity — boat on which shipment was to be made was delayed by weather and congested ports — goods were delivered to carrier on June 10, 1920, and shipped by another boat clearing on June 20, 1920 — seller offered to substitute another shipment made on June 2, 1920 — buyer could not reject on ground that shipment was not made on time — provision in contract excused delay — buyer was bound to accept substituted shipment.

In an action to recover damages for the failure of a buyer of tin to accept the goods the buyer was not justified in rejecting the shipment on the ground that it was not shipped from China on the day stipulated, where it appears that under the contract of sale the tin was to be shipped within two months from April 10, 1920; that it was to be purchased by the seller from a third person and the buyer was to establish at once a letter of credit in favor of said third person to cover the invoice; that the contract contained a provision that in case delays *en route* or other contingencies beyond the seller's control caused a delay in shipment the shipment should be made at the first opportunity; that the letter of credit was not established until twenty days had elapsed; that the boat on which the shipment was to be made was delayed by bad weather and port congestion and another boat which was due to leave China on June 10, 1920, was substituted; that the tin was delivered by the third person to the carrier in China which issued a bill of lading on June 10, 1920, but the boat on which the shipment was made did not clear until June 20, 1920.

Even though the shipment was not made in time the buyer was not in a position to refuse to accept delivery since the tin was delivered to the carrier within the

time specified in the contract, and furthermore, the delay of ten days in shipping the tin was excused by the terms of the contract, since it was distinctly provided that in case delays *en route* or other contingencies beyond the seller's control caused a delay in shipment then the shipment should be made at the first opportunity, which was done in this case.

When the buyer demanded tin shipped within two months after the contract was made and it was immediately offered a shipment of tin which in quality fulfilled the requirements of the contract and which was made within the two months' period it was bound to accept that shipment notwithstanding it was not the tin actually intended to be used to fill the order.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Charles W. G. Baiter* [*Reid L. Carr* of counsel], for the plaintiff.

*Gordon, Weed & Young* [*John Wallace Young* of counsel; *Gordon Gordon* and *J. Wesley Waldron* with him on the brief], for the defendants.

MARTIN, J.:

This submission involves two independent written contracts, each for the sale by plaintiff to defendants of Chinese tin. Both contracts were made in the city of New York, where the parties are engaged in business. There is no controversy concerning quantity, quality or price under either contract.

The first contract was dated March 31, 1920, and provided for the sale by plaintiff to defendants of twenty-five tons of No. 1 Chinese tin, ninety-nine per cent pure, at sixty cents per pound, to be shipped from China during April or May. Thereafter the market price declined sharply. When the tin was tendered on July 9, 1920, the defendants refused to accept delivery or pay for it. By reason of defendants' breach, plaintiff suffered damages amounting to $8,491.50 with interest from July 14, 1920, the date of sale; for this plaintiff demands judgment. No effort is made to justify this breach of contract on defendants' part.

By the second contract, dated April 10, 1920, plaintiff agreed to sell to defendants fifty tons of No. 1 Chinese tin, ninety-nine per cent pure, at sixty cents per pound. This contract was on the printed form adopted by the New York Metal Exchange, and subject to the rules thereof. It provided for " delivery c. i. f. New York " and for shipment from Hongkong within two months, direct to New York via Panama canal. It required defendant to establish " at once " an irrevocable banker's letter of credit for $67,200, the amount of the purchase price, direct in favor of one Fung Tang, in Hongkong, against which ninety-day sight documentary drafts should be available.

Fung Tang, in whose favor the credit was to be established,

owned and operated a smelter at Hongkong, and had previously offered to sell to plaintiff the quantity of tin in question. He was not a party to the contract, and his relation to the transaction was that of an independent vendor from whom the plaintiff was to purchase the tin. This was recognized by the parties by the provision that the credit was to be established " direct " to Fung Tang.

The contract contained the following clauses:

" 4E.— Strikes, lockouts, differences with workmen, accidents, delays *en route,* or other contingencies beyond seller's control, to be sufficient excuse for any delay in shipments traceable to these causes, but if from these causes shipments are not made within the contract time, they must be made by first opportunity. Seller is to notify buyer immediately of any postponement.

" 4F.— If accidents or other causes, beyond seller's control, prevent the arrival of tin by the steamer or steamers originally declared, and the tin arrives by another steamer or steamers, delivery shall be valid upon the arrival of the tin."

Instead of " at once " establishing the credit, defendants appear to have allowed twenty days to elapse without proceeding to open it. Fung Tang was notified of its establishment on May 12, 1920, though defendants claim it was arranged for with the Guaranty Trust Company on May 4, 1920.

On May 21, 1920, the plaintiff notified the defendants in writing under the heading " Declaration," " with the usual reservations pending receipt of final documents," that the fifty tons of tin for shipment under the contract of April 10, 1920, had been shipped on a boat named the *City of Colombo* on May 20, 1920, from Hongkong to New York. As a matter of fact the tin had not been shipped to the defendants on the steamship *City of Colombo,* and on July 3, 1920, the plaintiff notified the defendants to the effect that such notification was erroneous and that it " had been shipped " on another vessel called the *Toyooka Maru* from Hongkong, about June 20, 1920, and not by the steamship *City of Colombo* on May 20, 1920, as stated in the plaintiff's former letter of May 21, 1920.

After the receipt of the plaintiff's notification of July 3, 1920, to the effect that the tin had not been shipped on the steamship *City of Colombo* but on the steamship *Toyooka Maru,* and on July third and again on July ninth the defendants notified the plaintiff in writing that a shipment from Hongkong on the *Toyooka Maru* was not due performance by the plaintiff of the terms of the contract of April 10, 1920, which called for shipment " from Hongkong within two months, direct to New York, via Panama Canal," that is not later than June 9, 1920; and that if Fung Tang had drawn

against a shipment not made within the time specified in the agreement, the credit had not been correctly used and the defendants would not accept delivery.

Because of this alleged breach as to the second contract the defendants declined to take the first lot of twenty-five tons of the same kind of tin sold to them under the contract of March 31, 1920. They caused the second lot of fifty tons to be sold on notice to and for the account of the plaintiff at a loss of $20,472.04. For that amount with interest thereon and for the amount of certain interest claims on the sum paid to meet the drafts drawn by Fung Tang, the defendants demand judgment.

Fung Tang had on May twenty-sixth engaged cargo space for the fifty tons of tin on the *Tsuruga Maru*, which was scheduled to clear from Hongkong on June 10, 1920. On May thirty-first he was informed by the steamship company that the *Tsuruga Maru* had been delayed *en route* by bad weather and port congestion, and that her place would be taken by the *Toyooka Maru*, which would clear from Hongkong about the middle of June, although there was some chance that the latter ship would sail by June tenth. On May thirty-first and June first he endeavored to engage shipping space from the other companies operating steamers that sailed by June tenth, but was unable to do so, none being available.

On May thirty-first, when Fung Tang learned of the change in the carrier's schedule, the time was too short to render it possible to have the tin loaded on any of the vessels sailing on June first and second, even if cargo space had been obtained. On June ninth Fung Tang lightered the fifty tons of tin across the harbor, and pursuant to instructions of the steamship company delivered it at the wharf of the Hongkong and Kowloon Wharf and Godown Company. This was the wharf customarily used for the reception of freight intended for transportation on the vessels of the steamship company operating the *Toyooka Maru*, it having no wharf or similar facilities of its own.

The steamship company thereupon issued and delivered to him two bills of lading for the tin, dated June 10, 1920, took possession of the merchandise and marked it "received for shipment." These documents were not issued by the wharfinger, but by the carrier. Their issuance is evidence that the carrier accepted the goods for transportation, and that it recognized that the wharfinger received and held them as its agent or bailee.

It is contended by plaintiff, therefore, that Fung Tang did all that was possible to further the transit. He had engaged cargo space on a vessel scheduled to sail on June tenth, the last day

originally stated for shipment, lightered the tin to the wharf, delivered it there to the carrier in accordance with its instructions, ready for immediate transportation, and received the carrier's bill of lading therefor.

These bills of lading Fung Tang delivered on June eleventh to a bank in Hongkong, with the policies of insurance and other requisite documents, accompanied by drafts drawn under the letter of credit. The documents were forwarded in due course to the Guaranty Trust Company. Thereafter the tin was loaded upon the *Toyooka Maru*, which cleared for New York June twentieth.

On July third plaintiff wrote defendants as stated above, advising that the tin had been shipped by the *Toyooka Maru* instead of the *City of Colombo*, and asking defendants to change their records accordingly.

On July sixth defendants replied:

" Apparently the steamship ' Toyooka Maru ' arrived at Hongkong June 21st, and as the contract provides for shipment within two months from April 10th, you have not fulfilled all of the conditions of the contract, and your tender is not a good delivery.

'' We must therefore ask you to supply us with 50 tons of Chinese tin strictly in accordance with contract."

Plaintiff took defendants at their word and wrote to them as follows:

" We have not been definitely advised by Fung Tang of the actual date of bill of lading covering shipment per the S. S. ' Toyooka Maru,' but we wish to repeat our formal offer to you, inasmuch as there is some doubt in your minds as to the correctness of the date of bill of lading covering shipment per the S. S. ' Toyooka Maru,' and in order to avoid any possible chance of inflicting an injustice or loss on you, to give you in place of the bill of lading per the S. S. ' Toyooka Maru ' bills of lading per the S. S. ' Dryden,' which steamer sailed from Hongkong on June 2, and is therefore well within the terms of our contract No. 473.   \*   \*   \* "

This tin shipped on the steamship *Dryden* complied in all respects with the requirements called for by the order No. 473, and was shipped on a steamer that cleared from Hongkong for New York on June second. The defendants positively refused plaintiff's offer, stating:

" We do not recognize your right to substitute any other lot of tin, even if shipped within the time specified on the contract."

We believe, in view of the facts agreed upon in this case, the shipment of the goods was timely. In any event the defendants for several reasons were not in a position to refuse to accept delivery.

On the subject of shipment the Court of Appeals in *Mora y Ledon* v. *Havemeyer* (121 N. Y. 179, 185) said: " In an ordinary contract for the sale of goods to be shipped from one place to another, between which there are regular lines of transportation, it would not be supposed that the vendor was under obligation to exercise control over the medium of transportation after the goods were delivered to the carrier, or be responsible for delays in forwarding them to their place of destination."

In the case of " *Marlborough Hill* " (Ship) v. *Cowan & Sons* (L. R. [1921] 1 App. Cas. 444) the court said:

" It is a matter of commercial notoriety, and their Lordships have been furnished with several instances of it, that shipping instruments which are called bills of lading, and known in the commercial world as such, are sometimes framed in the alternative form ' received for shipment ' instead of ' shipped on board,' and further with the alternative contract to carry or procure some other vessel (possibly with some limitations as to the choice of the other vessel) to carry, instead of the original ship. It is contended, however, that such shipping instruments, whatever they may be called in commerce or by men of business, are nevertheless not bills of lading within the Bills of Lading Act, 1855, and it is said therefore not bills of lading within the meaning of the Admiralty Court Act, 1861.*

" Their Lordships are not disposed to take so narrow a view of a commercial document. To take the first objection first. There can be no difference in principle between the owner, master or agent acknowledging that he has received the goods on his wharf, or allotted portion of quay, or his storehouse awaiting shipment, and his acknowledging that the goods have been actually put over the ship's rail. The two forms of a bill of lading may well stand, as their Lordships understand that they stand, together. The older is still in the more appropriate language for whole cargoes delivered and taken on board in bulk; whereas ' received for shipment ' is the proper phrase for the practical business like way of treating parcels of cargo to be placed on a general ship which will be lying alongside the wharf taking in cargo for several days, and whose proper stowage will require that certain bulkier or heavier parcels shall be placed on board first, while others, though they have arrived earlier, wait for the convenient place and time of stowage.

---

* See 18 & 19 Vict. chap. 111, as named Bills of Lading Act, 1855, by 59 & 60 Vict. 14 (Short Titles Act, 1896); 24 & 25 Vict. chap. 10, being Admiralty Court Act, 1861.— [REP.

" Then as regards the obligation to carry either by the named ship or by some other vessel; it is a contract which both parties may well find it convenient to enter into and accept. The liberty to transship is ancient and well established, and does not derogate from the nature of a bill of lading; and if the contract begin when the goods are received on the wharf, substitution does not differ in principle from transshipment." (See, also, *Stallman* v. *Cundill & Co.*, 288 Fed. Rep. 643.)

Furthermore, if anything is needed to excuse the delay, clause 4E in the contract provides that if from any of the causes mentioned in that clause shipments are not made *within the contract time*, they must be made by first opportunity. The causes mentioned in that clause are, among others, " delays *en route*, or other contingencies beyond seller's control." The unexpected delay here was caused by delay of the ship on which it was intended to send the goods, and by its being replaced by another vessel. The situation would seem to come within the meaning of " or other contingencies beyond seller's control." This clause refers to shipments not made in the contract time and excuses such delay if due to contingencies beyond seller's control, thus recognizing as an excuse such contingencies even if occurring before shipment.

Fung Tang had contemplated, as arranged on May twenty-sixth, the shipment on a vessel which was to leave on June tenth. This steamship did not sail on June tenth because it was delayed by bad weather and congestion in ports, and it was replaced by another vessel which is the vessel on which Fung Tang shipped the merchandise. It is to be noted in this connection that the clause 4E provides not that the buyer be given a right of rescission for such delay or that the seller shall be excused from performance but that shipments " must be made by first opportunity." Fung Tang did ship by the first opportunity when a contingency beyond his control or the control of the seller made it impossible to ship on June 10, 1920, as planned. He took the first opportunity when the vessel which was scheduled to leave on June tenth was taken off and another vessel substituted.

The submission shows that Fung Tang could not obtain transportation on any other vessel after he received notice on May thirty-first that the steamer originally scheduled to leave on June tenth had been delayed and would be replaced by that vessel which actually did leave on June twentieth.

We are also of opinion that when the defendants demanded tin shipped within the two months allowed for shipment and were immediately offered tin from such a shipment they were bound to accept. Their refusal indicated they were not as much

concerned about receiving tin as they were in finding some means to escape performance of the contract. If they were anxious for a speedy delivery they should not have delayed opening a credit for over twenty days after they had made the contract to establish it at once.

There should be judgment for the plaintiff for the amount demanded.

CLARKE, P. J., MERRELL and FINCH, JJ., concur.

Judgment directed for plaintiff in accordance with opinion. Settle order on notice.