London Produce Company, Inc., Appellant, *v.* Poels & Brewster, Inc., Respondent.

First Department, April 30, 1926.

**Sales — action by seller to recover damages for breach of c. i. f. contract for sale of tallow to be shipped January/February, 1920, from Australia — tallow was refused on ground that shipment was not made within time specified — evidence shows shipment was made as agreed.**

In an action to recover damages for the refusal of the purchaser to accept a shipment of tallow sold to it under a c. i. f. contract calling for shipment during January/February, 1920, from Australia, the defense that the purchaser refused to accept the shipment because it was not shipped from Australia within the time agreed, cannot be sustained for the evidence clearly shows that the vessel carrying the tallow left Australia some time in January, 1920.

Appeal by the plaintiff, London Produce Company, Inc., from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 7th day of July, 1925, setting aside the verdict of a jury in favor of the plaintiff and granting a new trial.

*White & Case* [*David Paine* of counsel], for the appellant.

*John Kenneth Byard* [*Matthew Spalletta* of counsel], for the respondent.

Dowling, J. This action is brought to recover damages for the breach of a c. i. f. contract for the purchase of tallow by defendant from plaintiff, the buyer refusing to accept the documents on the ground that shipment had not been made in time. The facts are

not in dispute, and no testimony was offered upon the trial in defendant's behalf.

The contract is in writing, and is as follows:

" New York, <em>Jan. 20th,</em> 1920.

" The London Produce Company,
" 140 Nassau Street,
" New York City:

" Dear Sirs.— We herewith confirm purchase of you through Mr. A. Dalley of

   " 400 tons of 2240 pounds each, 5% more or less, of Australian Tallow, comprising 200 tons of your ' MBK ' mark and 200 tons of your ' RVL ' mark.

" Price: £105 /10 /0 per ton of 2240 pounds, c. i. f. New York.

" Quality: To be equal in quality to your recent shipment per S /S ' Masula.'

" Terms: Payment by sterling check upon arrival of goods against shipping documents and pro forma invoice based on shipping weights and tares, final settlement to be based on New York public weigher's landed gross weights (any soakage exceeding $7\frac{1}{2}$ pounds per package on the large casks to be allowed and any soakage exceeding $3\frac{1}{2}$ pounds per package on the small casks to be allowed).

" Shipment: From United Kingdom and /or Australia during January /February 1920.

" This contract is contingent upon strikes, fires, lockouts and all other causes beyond the control of either the sellers or buyers.

" In confirmation of your sale of the above, please sign duplicate copy enclosed and return to us.

" Yours faithfully,
" POELS & BREWSTER, INC.,
" (sgd)      C. M. Hibbard."

The only question at issue arises under the clause marked " shipment."

After the contract, calling for approximately 400 long tons of Australian tallow, had been signed, there was delivered one installment of 281,831 pounds of tallow, or approximately $125\frac{1}{2}$ long tons, and this was paid for in accordance with the terms of the contract. This was the first shipment, which came from England. The second shipment came from Australia on the steamship *Waimarino* and consisted of about 282 long tons. It was covered by four bills of lading, all for shipment on the *Waimarino,* and all dated January 17, 1920, about one and one-half months before the expiration of the limit for shipment, *i. e.,* January /February, 1920. The documents called for under a c. i. f. contract were tendered to

defendant, who refused to accept same, the defendant in writing stating it had " been advised that the ' Waimarino ' did not leave Australia until some time in March and as contract calls for shipment from Australia January/February, we do not feel there is any obligation upon us to accept delivery."

This is the second trial of this action. Upon the first trial plaintiff took the position, which it adhered to on appeal, that defendant by the letter last referred to made a definite choice of grounds on which to reject the goods, viz., that the steamship *Waimarino*, which concededly carried the shipment of goods, had left Australia after February, 1920, and, therefore, the final installment of the goods arriving on her was subject to rejection by defendant. Plaintiff's claim was that under the well-known rule that " shipment " means " putting goods on board ship " and not " date of sailing " (*Moray Ledon* v. *Havemeyer*, 121 N. Y. 179), it was of no moment when the *Waimarino* actually left the port of Melbourne. Hence the one objection which defendant made to the acceptance of the goods being immaterial and invalid, every other objection to the acceptance of the documents must be deemed to have been waived by it. Acting under that theory, plaintiff introduced no evidence as to when the goods in question were actually put on board the steamship. Having recovered a verdict in its favor, the same was set aside by the trial justice, and a new trial ordered. Upon appeal to this court the order was affirmed (208 App. Div. 767). An examination of the record upon that appeal shows that plaintiff relied entirely upon this theory of waiver by defendant, which was found untenable.

Upon the second trial of the action, the testimony of W. B. Caulsell of Melbourne, Australia, which had been taken by commission, was read in evidence. He was the agent of the Union Steamship Company, which owned and operated the steamship *Waimarino*, and among his duties were the checking of ship's and company's receipts, and if in order, to sign the bills of lading. He signed the four original bills of lading, of which photostat copies are included in the record. These bills of lading all bear date January 17, 1920, and cover 757 pipes of tallow aggregating 6,391 hundredweight. Caulsell testifies that he saw a portion of the goods on board, and on the wharf, during visits and inspection of the vessel and of the loading prior to sailing. He saw a number of casks on January sixteenth and seventeenth, and knew they were to be consigned to New York by the *Waimarino*. He identified the goods as those referred to in the bills of lading with the distinguishing marks therein set forth. He also testified that the goods in question were placed on board the steamer at Melbourne between January

14 and 17, 1920, consigned to New York. He knows the goods were all on board before the signing of the bills of lading, because they were not handed to him to be signed until the shippers had receipts of the ship's receiving clerk for the full quantity. He then testified that the *Waimarino* sailed from Melbourne, Australia, on January 17, 1920, for Sydney and Newcastle, New South Wales, *en route* to the Pacific coast, clearing for San Francisco and Vancouver. This was the last sailing of the *Waimarino* from Melbourne, as after this trip she was withdrawn from the Melbourne trade.

Upon these identical bills of lading, thus authenticated and proved by the Melbourne agent of the steamship company who had personally signed and issued them, the tallow therein referred to, which had arrived overland from San Francisco, was obtained by plaintiff's representative, upon defendant's refusal to accept the documents required upon a c. i. f. sale.

This tallow, identified as that covered by the four bills of lading, and transported to San Francisco by the *Waimarino* and then carried overland to New York, weighed in the aggregate when finally resold, 620,668 pounds.

Thus the identical goods, proved to have been covered by the bills of lading issued in Melbourne, Australia, and which left that port on the *Waimarino* on January 17, 1920, duly arrived in New York, and were found to correspond with the original bills of lading for that vessel, and were delivered upon the surrender thereof. Furthermore, they must have left Australia on January 17, 1920, since they concededly were carried on the *Waimarino*, which made no sailing from Australia after that date, after leaving New South Wales on that voyage. There is no question raised that the distinguishing marks on the goods and those set forth in the bills of lading did not correspond.

It follows that plaintiff sufficiently established the shipment of these goods within the contract period.

The order appealed from should, therefore, be reversed, with costs, and the verdict of the jury reinstated and judgment directed to be entered thereon in favor of plaintiff, with costs.

CLARKE, P. J., FINCH and McAVOY, JJ., concur.

Order reversed, with costs, the verdict reinstated, and judgment directed for plaintiff, with costs.