**CHICAGO, R. I. & P. RY. CO. v. PETROLEUM REFINING CO.**

**No. 3812.**

District Court, E. D. Kentucky, Covington Division.

March 31, 1930.

Rouse & Price, of Covington, Ky., for plaintiff.

Goebel, Dock & Goebel, of Cincinnati, Ohio, for defendant.

ANDREW M. J. COCHRAN, District Judge.

This cause is before me for trial and judgment upon a written stipulation waiving a jury. It was commenced June 30, 1927. By it plaintiff seeks to recover $523.-35 for moving empty oil tank cars owned by it. The movements took place between November 16, 1923, and January 5, 1924, both inclusive. During the same period of time the plaintiff moved for defendant oil tank cars loaded with oil. The compensation sought to be recovered is for the excess in mileage of the movement of the empty cars over that of the loaded cars. It is commonly referred to as a claim for excess empty mileage. The liability for excess empty mileage may be paid for by loaded mileage. Such accounts are kept for a year ending June 30th, and within six months there-

630

after may be paid in loaded mileage. The rule on this subject is in these words: "Such excess must be paid for by the owner either by an equivalent loaded mileage during the succeeding six months or at the tariff rates without minimum plus the mileage allowance that has been paid by the railroad to the owners of such excess empty mileage."

This period is known in railroad parlance as the equalization period. By virtue thereof the plaintiff here could not have demanded payment in cash of this account until January 1, 1925, and hence could not have brought this suit to recover same until then.

The sole defense made is the statute of limitations. By section 16(3) (a) of the Interstate Commerce Act (49 USCA § 16 (3) (a), it is provided: "All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after."

By subdivision (3) (e) it is further provided: "The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

The question before me for determination then is whether the movement by a railroad company of an empty oil tank car owned by another is a shipment of property within the meaning of this provision. Such car is undoubtedly property, but is such a movement of it a "shipment" within such meaning? The question must be approached from a consideration of fundamental notions or concepts. A movable article may be moved in two ways. The movement in one way is expressed by the words "carry," "convey," or "transport." These three words are synonymous and express the same idea.

"Carry" is thus defined in the Standard Dictionary: "To bear or cause to be borne as from one place to another."

"Convey" is so defined: "To transport from one place to another; carry; as to convey coal by barges."

"Transport" is thus so defined: "To carry or convey from one place to another."

Transport comes from the latin word "transporto," made up of "trans," over, and "porto," to carry. In the case of United States v. Sheldon, 2 Wheat. 119, 120, 4 L. Ed. 199, it was said: "There is no doubt but that the word transport, correctly interpreted * * * means to carry, to convey."

Ogdensburg, etc., R. R. Co. v. Pratt, 22 Wall. 123, 133, 22 L. Ed. 827, said: "Transported or carried are equivalent terms."

The movement in the other way is expressed by the words "pull," or "draw," or "push," or "shove."

These two ways of movement are distinct and not to be confused with each other. Move is the generic word and carry, convey, or transport, on the one hand, and pull or draw or push or shove, on the other, are specific. Just wherein, then, does the distinction between these two species of movement lie? In the one case the movement is effected by the article being on or in something else, which is moved. It is moved simply by going along with that something else. No force is applied to it to make it move. In the other case the movement is effected by force being applied to the article. The distinction may be illustrated thus. A mother may move her child by taking it up in her arms or placing it on her back, and she moves it by moving herself. The child is not moved by any force being applied to it. Force is applied to it in taking it up in her arms or placing it on her back, but then the application of force to it ceases. In such case the child is carried, conveyed, or transported. It is not pulled or drawn. Or she may move it by taking it by the hand or arm and pulling or drawing it along. The movement here is brought about by force applied to the child and ceases upon its being withdrawn. In such a case the child is not carried, conveyed, or transported. Or, again, one may own a mule and a cart. He may hitch the one to the other and mount the mule and then start the mule moving. In such case the mule is carrying, conveying, or transporting the owner. It is not pulling or drawing him, but it is pulling or drawing the cart. It cannot be said that the mule is either carrying, conveying, or transporting the cart.

The root idea of the word "carry" is to bear; also of the words convey and transport. The movement expressed by each of these words is effected by bearing, not by pulling or drawing or pushing or shoving. A locomotive in a train does not bear the cars which it moves. It pulls or draws or pushes or shoves them. A car in which goods are loaded bears those goods. It carries, conveys, or transports them. It is now in order to take up the word "ship." The primary idea of the word as given by the Standard Dictionary is, "To put for transport aboard a vessel." Advancing on this, it came to express the idea of, "To convey by ship or wa-

ter." And finally it has come to mean, according to common use, "To send by an established mode of transportation as to ship goods by rail or express." The word, therefore, expresses the idea of effecting movement by bearing, and it belongs to the same species as the words carry, convey, or transport.

This brings me to the word "shipment." It is thus defined by the Standard Dictionary: "That which is shipped, a consignment; as a large shipment of cattle." If any of its synonyms are substituted for the word "shipped" in this definition, we have, "That which is carried," or "That which is conveyed," or, "That which is transported," or, "That which is borne." It is impossible for one thinking straight, to substitute therefor the words "pulled" or "drawn," so as to have, "That which is pulled," or, "That which is drawn."

In Winston's Simplified Dictionary the word "shipment" is thus defined: "The act or process of having goods transported to a designated place; delivery of goods to a forwarding agent for conveyance by means of any established channel of transportation; the consignment of goods delivered for transportation." In the case of De Ganay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 525, 63 L. Ed. 1042, the court said: "Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them."

It must therefore be held that the words "shipment of property" in the statute relied on, according to such sense and meaning, do not cover the movement by a railroad company of an empty oil tank car owned by another. In the case of Ledon v. Havemeyer, 121 N. Y. 179, 24 N. E. 297, 299, 8 L. R. A. 245, the court said: "The words 'shipment' and 'shipped' are now used, indifferently, to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, over land as well as water, and imply, with respect to carriage by land a completed act, irrespective of the time or mode of transportation."

I find nothing in the context, i. e., in the other provisions of the Interstate Commerce Act, that justifies giving these words a meaning that will cover such movement. I do not think it necessary to go into detail here, except to refer to subdivision 13 of section 15 of that act (49 USCA § 15(13), which seems to me to be against giving it such meaning. It is in these words: "If the owner of property transported under this chapter directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section."

According to this, an empty oil tank case is an instrumentality furnished by the owner of oil for its transportation or shipment. Its movement by the carrier is not itself a transportation or shipment. That which is the subject of transportation or shipment is the oil.

There are other considerations which make against the defendant's contention. By the provision relied on the cause of action is deemed to accrue upon delivery or tender of delivery of the property shipped. There is what may be characterized as a delivery when the carrier parts with the possession of an empty oil tank car, but such delivery is different from a delivery of goods shipped to a consignee. The goods are delivered for use and consumption. The tank car is delivered to be filled again and returned. There is a finality in the former case that does not exist in the latter. It is not to be taken that both acts were intended to be covered by the same word. Then such a construction of the provision makes the statute of limitation begin to run before any action can be brought by the carrier to recover the charges. Here the defendant claims that the statute began to run January 5, 1924, and yet plaintiff could not have brought its action until January 1, 1925.

Judge Hickenlooper has held that the provision relied on by the defendant has no application to a case of this kind, and I know of no reason why I should not concur with him in his opinion.

The plaintiff is entitled to judgment.